576 S.E.2d 199

SOUTH CAROLINA SECOND INJURY FUND, Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Respondent.

In re Gilford R. ETHEREDGE, Claimant,

and

Gasque Farms, Employer.

No. 3594.

Court of Appeals of South Carolina.

Submitted May 6, 2002.
Decided Jan. 27, 2003.

118

P. Brooks Shealy, of Columbia, for appellant.

Pope D. Johnson, III, of Columbia, for respondent.

SHULER, J.:

In this workers' compensation case, the South Carolina Second Injury Fund appeals from a circuit court order affirming the full commission's finding that Liberty Mutual Insurance Company was entitled to reimbursement for death benefits paid to the estate of Gilford R. Etheredge. We affirm.

## FACTS/PROCEDURAL HISTORY

In May 1994, Gasque Farms owned and operated approximately 2,700 acres of farmland in and around Elloree, South Carolina. At the time, the business employed 62–year–old Gilford Etheredge to assist in managing its farming operations. Etheredge's usual duties included running errands, carrying fuel and dinner to field hands, and other similar tasks. Etheredge, however, normally did not operate farm equipment.

On May 24, 1994, Gasque Farms employees intentionally set fire to a 104–acre cut-over wheatfield. Although the burning of cut-over fields was standard practice, in this instance the fire blazed out of control. Shortly after noon, the fire jumped across a ditch and highway and began consuming a 55–acre field of unharvested wheat.

Manager Everett Gasque enlisted Etheredge to assist in controlling highway traffic affected by the heavy smoke. Gas-

que also sent Etheredge to retrieve a chainsaw to be used in containing the fire; Etheredge made two trips but returned with non-operational saws on both occasions. After a reprimand from Gasque, Etheredge spent the better part of the afternoon dealing with the fire and its aftermath. At approximately 5:30 p.m., he climbed into the cab of the farm pickup truck. As he cranked the engine, Etheredge suffered a fatal heart attack and the truck rolled down an embankment and into a nearby ditch.

Etheredge's widow filed a claim against Gasque Farms for workers' compensation death benefits. Liberty Mutual Insurance Company, Gasque Farms' compensation carrier, accepted the claim and paid benefits to Etheredge's estate. Liberty subsequently sought reimbursement from the South Carolina Second Injury Fund. The Fund denied Liberty's reimbursement claim and Liberty requested a hearing before the workers' compensation commission.

Following a hearing in December 1999, the single commissioner found Etheredge did not suffer an injury by accident arising out of and in the course of his employment and therefore agreed with the Fund that Liberty was not entitled to compensation pursuant to S.C.Code Ann. § 42–9–400(a) (1985). In addition, the commissioner noted the evidence was insufficient to establish Gasque Farms' knowledge of Etheredge's preexisting physical impairment as required by subsection (c) of the statute.

Liberty appealed and the full commission reversed. By order dated August 15, 2000, the commission held Etheredge's fatal heart attack was a compensible accident caused by unusual and extraordinary circumstances in his employment. The commission further concluded the knowledge prerequisite of § 42–9–400(c) was satisfied because Etheredge never knew he had a heart condition. Finding the company met the conditions for reimbursement, the commission ordered the Fund to reimburse Liberty, pursuant to § 42–9–400(a), for all aspects of the claim arising out of Etheredge's death.

The Fund petitioned the circuit court for review. Following a hearing on January 3, 2001, the circuit court issued an order affirming the full commission. This appeal followed.

## LAW/ANALYSIS

### Standard of Review

■ The Administrative Procedures Act establishes the applicable standard of review for decisions of the workers' compensation commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981); *Adkins v. Georgia–Pacific Corp.*, 350 S.C. 34, 564 S.E.2d 339 (Ct.App.2002). Pursuant to the Act, an appellate court

■ "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." S.C.Code Ann. § 1–23–380(A)(6) (1986). Thus, in reviewing a commission decision, this Court will not overturn factual findings unless "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Id.* at § 1–23–380(A)(6)(e); *see Adams v. Texfi Indus.*, 341 S.C. 401, 404, 535 S.E.2d 124, 125 (2000). "Substantial evidence" is evidence which, considering the entire record, would allow reasonable minds to arrive at the same conclusion reached by the administrative agency. *See Adams*, 341 S.C. at 404, 535 S.E.2d at 125; *Lark*, 276 S.C. at 135, 276 S.E.2d at 306.

### Discussion

■ The South Carolina Second Injury Fund is intended to "encourage the employment of disabled or handicapped persons without penalizing an employer with greater liability if the employee is injured because of his preexisting condition." *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund*, 318 S.C. 516, 518, 458 S.E.2d 550, 551 (1995). Reimbursement from the Fund is governed by section 42–9–400, which provides in pertinent part:

> If an employee who has a permanent physical impairment ... incurs a subsequent disability from injury by accident arising out of and in the course of his employment, resulting in compensation ... for disability that is substantially greater, by reason of the combined effects of the preexisting impairment and subsequent injury ... than that which would have resulted from the subsequent injury alone ... [the employee's] employer or his insurance carrier shall be reimbursed from the Second Injury Fund ....

S.C.Code Ann. § 42–9–400(a) (1985). The statute also contains a "knowledge" provision that requires an employer seeking reimbursement to demonstrate it either knew of the employee's preexisting permanent physical impairment or did not know because the employee concealed the condition or was unaware of it himself. *Id.* at § 42–9–400(c).

The Fund first argues the circuit court erred in affirming the commission's determination that Etheredge had a preexisting permanent physical impairment as defined in § 42–9–400(d). This issue is not preserved.

The Fund's petition for review listed forty-nine exceptions to the decision of the full commission. Although the transcript from the hearing before the circuit court reveals the Fund challenged the commission's finding that Etheredge's preexisting heart condition was a permanent physical impairment as defined in § 42–9–400(d), the circuit court's order fails to address the issue. As the Fund did not file a Rule 59(e), SCRCP motion requesting a ruling, the issue is not preserved for appellate review. *See Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000) (affirming court of appeals' conclusion that issue that had been raised to but not ruled upon by the trial court was not preserved for review where the appellant failed to make a Rule 59(e) motion to alter or amend the judgment); *Fraternal Order of Police v. South Carolina Dep't of Revenue,* 332 S.C. 496, 501, 506 S.E.2d 495, 497 (1998) (finding argument on appeal not preserved even where raised to the circuit court because "that court failed to rule on the issue and [appellants] failed to call this omission to the circuit court's attention in a Rule 59(e), SCRCP, motion").

The Fund next asserts the circuit court erred in affirming the commission's conclusion that Etheredge had no prior knowledge of his heart condition. We disagree.

At autopsy, Dr. Joel Sexton determined Etheredge had severe coronary atherosclerosis and concluded Etheredge died from acute coronary insufficiency, i.e., a heart attack, as a result. In deposition testimony, Etheredge's wife of thirty-four years, Connie, stated neither she nor Etheredge was aware of any significant health problems prior to the heart attack. She further testified Etheredge did not have high blood pressure, and related that a physical examination by his

personal physician in December 1993 revealed no health problems other than a usual admonition for Etheredge to watch his weight.

Although Connie testified her husband complained of chest pain the evening before he died, she stated he told her it was "like when you fell out of the tub ... like a pulled muscle or something ... a bad rib." Etheredge advised Connie he thought the pain stemmed from a job repairing an irrigation pump because the other employee with whom he had been working "complained about the same thing." In testimony before the commission, farm manager Everett Gasque also averred he was unaware Etheredge, whom he had employed for seven years, had any heart problems prior to the fatal attack.

The Fund presented no evidence contradicting either Gasque or Connie Etheredge's testimony and the obvious conclusion that Etheredge was unaware of his coronary problems. We therefore agree with the circuit court that the evidence presented would allow a reasonable mind to reach the same result as the commission on this issue.

■ The Fund further contends the circuit court erred in affirming the commission's finding that Etheredge's employment conditions on May 24, 1994 were unusual or extraordinary. We discern no error.

■ An employee who becomes sick or dies of natural causes on the job "does not suffer an accident arising out of employment because the condition is a natural result or consequence that might be termed normal and to be expected." *Jennings v. Chambers Dev. Co.*, 335 S.C. 249, 255, 516 S.E.2d 453, 456 (Ct.App.1999). However, an employee who dies of a heart attack or other vascular injury while working may be entitled to workers' compensation benefits if it is shown "the death arose out of employment, in that it was brought about by unexpected strain or over-exertion, or as a result of unusual and extraordinary conditions of employment." *Id.; see Lockridge v. Santens of Am., Inc.*, 344 S.C. 511, 520, 544 S.E.2d 842, 847 (Ct.App.2001) (stating a claimant must prove a heart attack was induced by unexpected strain or by unusual and extraordinary conditions or there is no injury by accident). Although the record here discloses that, for the most

part, Etheredge's job involved running errands and otherwise assisting in general farm management, it also reveals that the events of May 24, 1994 turned what was a usual task for farm employees—the burning of harvested fields—into the extraordinary task of managing an out-of-control fire threatening fifty-five acres of unharvested wheat.

As noted by the full commission and circuit court, Etheredge spent several hours that afternoon helping contain the fire and its effects. The fire was extinguished but revived on three separate occasions. Gasque twice sent Etheredge for a chain saw to cut away dead trees; when Etheredge retrieved non-operational saws both times, Gasque raised his voice and cursed him. According to Gasque's testimony before the commission, the whole area was "very smokey" [sic] and everyone working, including Etheredge, was subjected to "a good bit of smoke all day." Gasque explained that despite being about fifty yards away at the time Etheredge's truck went into the ditch, "there was so much smoke there I could not see."

All told, Gasque related it had been a stressful day for him and appeared stressful to others as well. He stated he had experienced only one other similar fire in forty years of farming and that he would "never forget it." Based on this testimony and evidence indicating an abnormally stressful work environment on May 24, we affirm the circuit court decision holding substantial evidence supports the full commission's determination of unusual or extraordinary employment conditions. *See Brown v. La France Indus.,* 286 S.C. 319, 333 S.E.2d 348 (Ct.App.1985); *Poulos by Poulos v. Pete's Drive-In No. 3,* 284 S.C. 264, 325 S.E.2d 583 (Ct.App.1985).

 Lastly, the Fund argues it was error for the circuit court to affirm the commission's conclusion that these conditions caused Etheredge's fatal heart attack. We disagree.

 The requisite showing for compensability in heart attack cases consists of two distinct parts—medical and legal—each of which relates to causation. *See* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 46.03[1] (2002). In general, the legal component is established when the law defines what type of exertion or circumstance of employment satisfies the "arising out of" test, while

the required medical showing resolves the question of whether the exertion or particular circumstance in fact caused the injury. *Id.* Successful claimants must satisfy both. *See Shealy,* 341 S.C. at 459, 535 S.E.2d at 444 (applying the "heart attack standard" to mental-mental injuries and holding that "[i]n order for Shealy to recover workers' compensation benefits, he must prove *both:* (1) that he was exposed to unusual and extraordinary conditions in his employment; *and* (2) that these unusual and extraordinary conditions were the proximate cause of his mental breakdown") (emphasis added); *Moore v. City of Easley,* 322 S.C. 455, 462, 472 S.E.2d 626, 630 (1996) ("[A]ngina is compensable only to the extent that it causes disability *and* arises out of extreme or unusual work circumstances."); *Owings v. Anderson County Sheriff's Dep't,* 315 S.C. 297, 433 S.E.2d 869 (1993) (stating that where substantial evidence supported finding claimant's heart problems were not causally related to his employment activities, there was no error in concluding the injury did not arise out of his admittedly physically demanding job training).

Undoubtedly, the record must evince a causal connection between any extreme exertion or extraordinary or unusual conditions of employment and a claimant's heart-related injury or death. *See Lorick v. SCE & G,* 245 S.C. 513, 518, 141 S.E.2d 662, 664 (1965) ("The mere fact of death during employment is not a basis for an award. The death must be proximately caused by an accident that arose out of the employment[,] and the burden is on the claimant to establish such fact."). The burden lies with the claimant to demonstrate causation by a preponderance of the evidence. *Id.* Whether any causal connection exists between a claimant's employment and an injury is a question of fact for the single commissioner or full commission. *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 519 S.E.2d 102 (1999).

In this case, the Fund contends "[t]here is no evidence that anything done ... or experienced by [Etheredge] brought about his death." A close inspection of the Fund's brief, however, reveals the crux of its argument to be the lack of *direct* evidence, either testimonial or documentary, lay or medical, connecting Etheredge's heart attack to the unusual conditions of his employment on the afternoon of the fire. This argument is misplaced.

It is well settled that evidence tending to establish causation may be circumstantial or inferential in nature. As our supreme court long ago stated:

"Proof that the claimant sustained an injury and that it arose out of and in the course of employment may be established by circumstantial as well as by direct evidence where the circumstances surrounding the occurrence of the injury are such as to lead an unprejudiced mind reasonably to infer that it was caused by [the] accident . . . ."

*Hewitt v. Cheraw Cotton Mills,* 217 S.C. 90, 94–95, 59 S.E.2d 712, 714 (1950) (quoting *Woodson v. Kendall Mills,* 213 S.C. 395, 400, 49 S.E.2d 597, 599 (1948)), *cited with approval in Tiller v. Nat'l Health Care Ctr.,* 334 S.C. 333, 341, 513 S.E.2d 843, 846–47 (1999); *see Robinson v. City of Cayce,* 265 S.C. 441, 445, 219 S.E.2d 835, 836 (1975) (stating that factual findings in workers' compensation cases "may be based on reasonable inferences drawn from" the evidence); *Eagles v. Golden Cove, Inc.,* 260 S.C. 113, 116, 194 S.E.2d 397, 398 (1973) (sustaining factual finding that bee sting caused employee's death despite absence of an opinion as to cause of death in the record; court specifically noted that "[c]ircumstantial evidence may be used in establishing [a] causal connection between injury . . . and death"); *Arnold v. Benjamin Booth Co.,* 257 S.C. 337, 341, 185 S.E.2d 830, 832 (1971) ("Circumstantial evidence and lay testimony can be sufficient to support a finding of causal connection in a Workmen's Compensation case . . . if the facts and circumstances proved give rise to a reasonable inference that there was a causal connection between the disability and the injury.").

Here, the commission found, and the circuit court reiterated, the following:

Normally, [Etheredge] was involved in assisting in the management of the farm, running errands, carrying fuel and dinner to the men in the field, and tasks of that nature. He had performed those tasks, on a regular basis, without difficulty for some seven years, notwithstanding his severe coronary disease. The duties that [he] was performing on the afternoon of his death were clearly different. . . . Mr. Etheredge was found dead as a result of a heart attack after a long afternoon of dealing with the fire. Considering all of the evidence, including the evidence of his pre-existing

severe coronary artery disease, we find that the evidence establishe[s] a causal connection between the unusual and extraordinary circumstances in the employment and the fatal heart attack.

Because substantial record evidence supports this conclusion, we find no error.

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.