611 S.E.2d 297

**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**SOUTH CAROLINA SECOND INJURY FUND, Respondent.**

**In re Timothy Paul Williams, Employee,**

v.

**Tate Metalworks/Liberty Mutual Insurance Company, Employer/Carrier.**

No. 3949.

Court of Appeals of South Carolina.

Heard Feb. 9, 2005.

Decided Feb. 22, 2005.

Rehearing Denied April 21, 2005.

614

Pope D. Johnson, III, of Columbia, for Appellant.

Robert M. Cook, II, of Batesberg–Leeseville, and Terry Michael Mauldin, of Columbia, for Respondent.

ANDERSON, J.:

Timothy Paul Williams (Claimant) lost his right leg in a work-related accident. Liberty Mutual Insurance Company (Liberty) sought reimbursement for compensation benefit payments from the South Carolina Second Injury Fund (the Fund) based on Claimant's preexisting impairment. The circuit court ruled that Liberty was not entitled to reimbursement of the controverted payments. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

Claimant sustained a compensable injury when a steel I-beam fell on his legs. His right leg was essentially amputated above the knee in the accident, and his left leg was crushed. Claimant was awarded 100% permanent partial disability to his right leg and 45% permanent partial disability to his left leg. The orders of the single commissioner, the appellate panel, and the circuit court all found that Claimant's 100% disability to the right leg was caused by the industrial accident alone, and his diabetes, a preexisting impairment, played no role in the loss of that leg.

Liberty seeks reimbursement from the Fund pursuant to section 42–9–400 of the South Carolina Code (1985), because of Claimant's preexisting diabetes. The Fund reimbursed Liberty's claim regarding all medical payments and disability compensation, with the exception of the 100% permanent disability paid for the right leg. The Fund argues the claim does not qualify for reimbursement because the total loss of the right leg was solely attributable to the industrial accident. The hearing commissioner ruled in the Fund's favor. The appellate panel reversed. However, the appellate panel's decision was reversed by the circuit court.

## STANDARD OF REVIEW

■■■■ The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the workers' compensation commission. *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 599 S.E.2d 604 (Ct.App.2004); *see Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981); *Gibson v. Spartanburg Sch. Dist. No. 3,* 338 S.C. 510, 526 S.E.2d 725 (Ct.App.2000). A reviewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Bursey v. South Carolina Dep't of Health and Envtl. Control,* 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004); S.C.Code Ann. § 1–23–380(A)(6)(e) (Supp. 2003). Under the scope of review established in the APA, this Court may not substitute its judgment for that of the commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Stone v. Traylor Bros., Inc.,* 360 S.C. 271, 600 S.E.2d 551 (Ct.App.2004); *Frame v. Resort Servs., Inc.,* 357 S.C. 520, 593 S.E.2d 491 (Ct.App.2004); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996); S.C.Code Ann. § 1–23–380(A)(6)(d) (Supp.2003).

■■■■ The substantial evidence rule of the APA governs the standard of review in a workers' compensation decision. *Frame,* 357 S.C. 520, 593 S.E.2d 491; *Corbin v. Kohler Co.,* 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002). This Court's review is limited to deciding whether the commission's decision is unsupported by substantial evidence or is controlled by some error of law. *See Grant v. Grant Textiles,* 361 S.C. 188, 603 S.E.2d 858 (Ct.App.2004); *Gibson,* 338 S.C. at 517, 526 S.E.2d at 728–29; *see also Dukes v. Rural Metro Corp.,* 356 S.C. 107, 109, 587 S.E.2d 687, 688 (2003) ("This Court will not overturn a decision by the Workers' Compensation Commission unless the determination is unsupported by substantial evidence."); *Lyles v. Quantum Chem. Co. (Emery),* 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993) (noting that in reviewing decision of workers' compensation commission, court of appeals will not set aside its findings unless they are not

supported by substantial evidence or they are controlled by error of law).

Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Pratt v. Morris Roofing, Inc.,* 357 S.C. 619, 594 S.E.2d 272 (2004); *Jones v. Georgia–Pacific Corp.,* 355 S.C. 413, 586 S.E.2d 111 (2003); *Etheredge v. Monsanto Co.,* 349 S.C. 451, 562 S.E.2d 679 (Ct.App.2002); *Broughton v. South of the Border,* 336 S.C. 488, 520 S.E.2d 634 (Ct.App.1999). The appellate panel is the ultimate fact finder in workers' compensation cases and is not bound by the single commissioner's findings of fact. *Gibson,* 338 S.C. at 517, 526 S.E.2d at 729; *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 519 S.E.2d 583 (Ct.App. 1999). "The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel." *Frame,* 357 S.C. at 528, 593 S.E.2d at 495 (citing *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000)); *Parsons v. Georgetown Steel,* 318 S.C. 63, 456 S.E.2d 366 (1995); *Gibson,* 338 S.C. at 517, 526 S.E.2d at 729. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Dukes,* 356 S.C. 107, 587 S.E.2d 687; *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 519 S.E.2d 102 (1999); *DuRant v. South Carolina Dep't of Health & Envtl. Control,* 361 S.C. 416, 604 S.E.2d 704 (Ct.App.2004); *Corbin v. Kohler Co.,* 351 S.C. 613, 571 S.E.2d 92 (Ct.App.2002); *Muir,* 336 S.C. at 282, 519 S.E.2d at 591. Where there are conflicts in the evidence over a factual issue, the findings of the appellate panel are conclusive. *Hargrove* at 290, 599 S.E.2d at 611; *Etheredge,* 349 S.C. at 455, 562 S.E.2d at 681.

The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Anderson v. Baptist Med. Ctr.,* 343 S.C. 487, 541 S.E.2d 526 (2001); *Hicks v. Piedmont Cold Storage, Inc.,* 335 S.C. 46, 515 S.E.2d 532 (1999); *Frame* at 528, 593 S.E.2d at 495. It is not within our province to reverse

findings of the appellate panel which are supported by substantial evidence. *Pratt,* 357 S.C. at 622, 594 S.E.2d at 274–75; *Broughton,* 336 S.C. at 496, 520 S.E.2d at 637. The appellate court is prohibited from overturning findings of fact of the appellate panel, unless there is no reasonable probability the facts could be as related by the witness upon whose testimony the finding was based. *Hargrove* at 290, 599 S.E.2d at 611; *Etheredge,* 349 S.C. at 455–56, 562 S.E.2d at 681.

## *LAW/ANALYSIS*

### I. Principles of Statutory Construction

 The cardinal rule of statutory interpretation is to ascertain the intent of the legislature. *State v. Scott,* 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002); *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken,* 354 S.C. 18, 579 S.E.2d 334 (Ct.App.2003); *see also Gordon v. Phillips Utils. Inc.,* 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."); *Olson v. Faculty House of Carolina, Inc.,* 344 S.C. 194, 205, 544 S.E.2d 38, 44 (Ct.App.2001) ("The quintessence of statutory construction is legislative intent."). A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute. *Davis v. NationsCredit Fin. Servs. Corp.,* 326 S.C. 83, 484 S.E.2d 471 (1997); *Daisy Outdoor Adver. Co. v. South Carolina Dep't of Transp.,* 352 S.C. 113, 120, 572 S.E.2d 462, 466 (Ct.App.2002); *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App. 1996). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *McClanahan v. Richland County Council,* 350 S.C. 433, 567 S.E.2d 240 (2002); *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998); *State v. Morgan,* 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002); *State v. Hudson,* 336 S.C. 237, 519 S.E.2d 577 (Ct.App.1999). The determination of legislative intent is a matter of law. *Charleston County Parks & Recreation Comm'n v. Somers,* 319 S.C. 65, 459 S.E.2d 841 (1995); *South Carolina Uninsured Em-*

*ployer's Fund v. House,* 360 S.C. 468, 602 S.E.2d 81 (Ct.App. 2004); *Olson,* 344 S.C. at 207, 544 S.E.2d at 45.

 The legislature's intent should be ascertained primarily from the plain language of the statute. *State v. Landis,* 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Stephen,* 324 S.C. at 339, 478 S.E.2d at 77. The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Mun. Ass'n of South Carolina v. AT&T Communications of S. States, Inc.,* 361 S.C. 576, 606 S.E.2d 468 (2004); *Hitachi Data Sys. v. Leatherman,* 309 S.C. 174, 420 S.E.2d 843 (1992); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Hudson,* 336 S.C. at 246, 519 S.E.2d at 582. The court's primary function in interpreting a statute is to ascertain the intent of the General Assembly. *Smith v. South Carolina Ins. Co.,* 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct.App.2002). A statute must receive a practical and reasonable interpretation consistent with the "design" of the legislature. *Id.* "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *South Carolina Farm Bureau Mut. Ins. Co. v. Mumford,* 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).

 When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Branch v. City of Myrtle Beach,* 340 S.C. 405, 532 S.E.2d 289 (2000); *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998); *Hudson,* 336 S.C. at 246, 519 S.E.2d at 581; *see also Santee Cooper Resort v. South Carolina Pub. Serv. Comm'n,* 298 S.C. 179, 184, 379 S.E.2d 119, 122 (1989) ("Words used in a statute should be taken in their ordinary and popular significance unless there is something in the statute requiring a different interpretation."). "The terms must be construed in context and their meaning determined by looking at the other terms used in the statute." *Hinton v. S.C. Dep't of Prob., Parole and Pardon Servs.,* 357 S.C. 327, 332–33, 592 S.E.2d 335, 338 (Ct.App.2004), *cert. granted* (Jan. 7, 2005) (citing *S. Mut. Church Ins. Co. v. South Carolina Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 342, 412 S.E.2d 377, 379 (1991)); *Dupree,* 354 S.C. at 693, 583 S.E.2d at 446.

Courts should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State*, 328 S.C. 1, 16, 492 S.E.2d 777, 779 (1997); *see also State v. Gordon*, 356 S.C. 143, 152, 588 S.E.2d 105, 110 (2003) ("[T]he court should not consider the particular clause being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law."); *Stephen* at 340, 478 S.E.2d at 77 (finding statutory provisions should be given reasonable and practical construction consistent with purpose and policy of entire act). Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and given effect, if it can be done by any reasonable construction. *Tillotson v. Keith Smith Builders*, 357 S.C. 554, 593 S.E.2d 621 (Ct.App.2004); *Higgins v. State*, 307 S.C. 446, 415 S.E.2d 799 (1992). Dictionaries can be helpful tools during the initial stages of legal research for the purpose of defining statutory terms. *Heilker v. Zoning Bd. of Appeals for City of Beaufort*, 346 S.C. 401, 552 S.E.2d 42 (Ct.App.2001).

If a statute's language is unambiguous and clear, there is no need to employ the rules of statutory construction and this Court has no right to look for or impose another meaning. *Tilley v. Pacesetter Corp.*, 355 S.C. 361, 585 S.E.2d 292 (2003); *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995); *Cowan v. Allstate Ins. Co.*, 351 S.C. 626, 631, 571 S.E.2d 715, 717 (Ct.App.2002); *see also City of Camden v. Brassell*, 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). When the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Patterson v. State*, 359 S.C. 115, 597 S.E.2d 150 (2004); *Holley v. Mount Vernon Mills, Inc.*, 312 S.C. 320, 440 S.E.2d 373 (1994); *Carolina Alliance for Fair Employment v. S.C. Dep't of Labor, Licensing, & Regulation*, 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 580 S.E.2d 100

(2003); *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *AT&T Communications*, 361 S.C. 576, 606 S.E.2d 468; *Durham v. United Cos. Fin. Corp.*, 331 S.C. 600, 503 S.E.2d 465 (1998); *Worsley Cos. v. South Carolina Dep't of Health & Envtl. Control*, 351 S.C. 97, 102, 567 S.E.2d 907, 910 (Ct.App.2002); *see also Timmons v. South Carolina Tricentennial Comm'n*, 254 S.C. 378, 175 S.E.2d 805 (1970) (providing that where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language.). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *Vaughn v. Bernhardt*, 345 S.C. 196, 547 S.E.2d 869 (2001); *Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000); *Bayle*, 344 S.C. at 122, 542 S.E.2d at 739.

 If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Morgan*, 352 S.C. at 367, 574 S.E.2d at 207; *see also Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. *Hudson*, 336 S.C. at 247, 519 S.E.2d at 582; *Brassell*, 326 S.C. at 561, 486 S.E.2d at 495; *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck*, 330 S.C. 371, 498 S.E.2d 894 (Ct.App.1998). In construing a statute, the court looks to the language as a whole in light of its manifest purpose. *State v. Dawkins*, 352 S.C. 162, 573 S.E.2d 783 (2002); *Adams v. Texfi Indus.*, 320 S.C. 213, 464 S.E.2d 109 (1995); *Burgess v. Nationwide Mut. Ins. Co.*, 361 S.C. 196, 603 S.E.2d 861 (Ct.App.2004).

## II. Interpretation of Section 42–9–400

 The instant case requires this Court to determine the scope and reach of section 42–9–400 of the South Carolina Code (1985). Specifically, the issue is whether the statute permits Liberty to recover compensation payments from the

Fund when the injury for which reimbursement is sought was not affected by the preexisting impairment.

 Section 42–7–310 of the South Carolina Code (1985) establishes the Second Injury Fund. The purpose of the Fund is to "encourage the employment of disabled or handicapped persons without penalizing an employer with greater liability if the employee is injured because of his preexisting condition." *South Carolina Second Injury Fund v. Liberty Mut. Ins. Co.,* 353 S.C. 117, 122, 576 S.E.2d 199, 202 (Ct.App. 2003) (quoting *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund,* 318 S.C. 516, 518, 458 S.E.2d 550, 551 (1995)). The Fund accomplishes this goal by absorbing some of the risk that such a worker will become injured in the workplace. Its creation allows the employer, or his insurance carrier, to seek compensation from the Fund when an employee with a prior permanent physical impairment incurs a subsequent disability in the workplace. *See* S.C.Code Ann. § 42–9–400(a) (1985).

Section 42–9–400(a) provides:

If an employee who has a permanent physical impairment from any cause or origin incurs a subsequent disability from injury by accident arising out of and in the course of his employment, resulting in compensation and medical payments liability or either, for disability that is substantially greater, by reason of the combined effects of the preexisting impairment and subsequent injury or by reason of the aggravation of the preexisting impairment, than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall in the first instance pay all awards of compensation and medical benefits provided by this Title; but such employer or his insurance carrier shall be reimbursed from the Second Injury Fund as created by § 42–7–310 for compensation and medical benefits in the following manner:

(1) Reimbursement of all compensation benefit payments payable subsequent to those payable for the first seventy-eight weeks following the injury.

(2) Reimbursement of fifty percent of medical payments in excess of three thousand dollars during the first seventy-eight weeks following the injury and then reimbursement of

all medical benefit payments payable subsequent to the first seventy-eight weeks following the injury; *provided, however,* in order to obtain reimbursement for medical expense during the first seventy-eight weeks following the subsequent injury, an employer or carrier must establish that his liability for medical payments is substantially greater, by reason of the combined effects of the preexisting impairment and subsequent injury or by reason of the aggravation of the preexisting impairment, than that which would have resulted from the subsequent injury alone.

S.C.Code Ann. § 42–9–400(a) (1985).

Liberty argues the appellate panel correctly determined this section clearly and unambiguously sets forth the requirements, which, when met, trigger the right of reimbursement. Specifically, Liberty claims that a plain reading of section 42–9–400(a)(1) gives it the right to reimbursement for *all* compensation benefit payments without regard to whether a nexus exists between the payments and the preexisting impairment. However, an examination of the law and its application to these facts reveals that the circuit court properly rejected this reading of the statute.

This is an issue of first impression in South Carolina. After carefully considering the facts of this case; the nature of the injury; the existing case law, which allows reimbursement to be limited to either compensation or medical liability when factually supported; and the purpose of the Fund, this Court concludes as a matter of law Liberty can only be reimbursed for the liability proximately owed to the prior disability.

Claimant, who suffered from diabetes, was working when the steel I-beam fell and crushed his legs. At the time the I-beam fell onto his right leg, it essentially traumatically amputated the right leg above the knee. In addition, the I-beam crushed and fractured his left leg. The preexisting diabetes acted to exacerbate the condition of his left leg and contributed to increased medical expenses, but the diabetes had no impact on the amputation of his right leg or the disability rating given to Claimant because of the loss of his right leg. Therefore, the preexisting diabetes had no impact on the portion of the award paid for the injury to the right leg.

In *Liberty Mutual Insurance Company v. South Carolina Second Injury Fund,* 318 S.C. 516, 518, 458 S.E.2d 550, 551–52 (1995), the supreme court ruled a carrier was entitled to reimbursement for medical costs but not disability payments. The court noted that while diabetes exacerbated the workplace injury and ultimately required a double amputation, the workplace accident alone was enough to cause the claimant to become permanently and totally disabled. *Id.* at 517, 458 S.E.2d at 551. Importantly, the court recognized the accident was sufficient to trigger permanent and total disability payments. The court approved the circuit court's interpretation of section 42–9–400(a) that "if a carrier incurs greater liability for compensation and/or medical payments, he is entitled to reimbursement of those." *Id.* at 519, 458 S.E.2d at 551. Liberty had incurred greater medical payments because of the claimant's diabetes; however, Liberty "did not incur greater compensation payments as the accident rendered [the claimant] totally disabled and [the claimant]'s diabetes did not increase these payments." *Id.* at 519, 458 S.E.2d at 551–52. Thus, the insurer could not recover reimbursement for the compensation payments, but the court allowed reimbursement for the medical expenses which were attributable to the diabetes.

*Liberty Mutual* stands for the proposition that medical and compensation reimbursement do not necessarily follow from each other, but are, instead, fact dependant. Following the logic of *Liberty Mutual,* it is appropriate to consider the injuries to the right and left legs separately. The diabetes did not exacerbate the injury to the right leg and did not add to the medical expenses. The statutory scheme of scheduling the loss of each individual member buttresses our conclusion. *See, e.g.,* S.C.Code Ann. § 42–9–30(15) (1985) (providing the amount of compensation and the period of disability for the loss of a leg).

We are compelled toward this result by the rules of statutory interpretation discussed in *Liberty Mutual.* There, the court stated the "primary function in interpreting a statute is to ascertain the intent of the legislature" and "[t]he real purpose of the legislature will prevail over the literal import of the words." *Liberty Mutual,* 318 S.C. at 519, 458 S.E.2d at 551 (citations omitted). The court explained the intent and pur-

pose of the Fund "is to encourage the employment of disabled or handicapped persons without penalizing an employer with greater liability if the employee is injured because of his preexisting condition." *Id.* The interpretation of section 42–9–400 proffered by Liberty in the case *sub judice* does not advance the purpose of the Fund as explicated by the *Liberty Mutual* court. Instead, Liberty's reading of the statute would provide the insurer with a windfall unrelated to Claimant's preexisting condition.

## CONCLUSION

For the reasons discussed above, the circuit court's interpretation of section 42–9–400, providing for reimbursement for the left leg, but not the right, is

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.