THIS OPINION HAS NO PRECEDENTIAL
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
 EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF
 SOUTH CAROLINA
 In The Court
 of Appeals

 
 
 
 Delila D. Mullen, Appellant,
 v.
 Beaufort County School District and the S.C. School
 Boards Insurance Trust, Respondents.
 
 
 

Appeal From
Beaufort County
Marvin H. Dukes,
III, Circuit Court Judge

Unpublished Opinion
No. 2011-UP-148
Heard November 3,
2010  Filed April 12, 2011 

REVERSED AND
REMANDED

 

 
 
 
 James H. Moss, of Beaufort, for Appellant.
 Kirsten Leslie Barr, of Mount Pleasant,
 for Respondents.
 
 
 

 PER CURIAM:  Delila
 Mullen appeals the circuit court's affirmation of the Appellate Panel of the South
 Carolina Workers' Compensation Commission's (Appellate Panel) finding that she
 did not (1) sustain a compensable injury by accident or an occupational disease
 and (2) suffer any permanent impairment or loss of use as a result of any
 alleged mold exposure at work.  We reverse and remand.

 
 FACTS
 

Mullen is employed by the Beaufort County
 School District as a teacher at Hilton Head Elementary School.  In May 2002, Mullen
 developed a cough, sinus problems, headaches, and fatigue. She was subsequently
 treated by a doctor in June 2002 for bronchitis and a sinus infection. According
 to Mullen, her symptoms improved over the summer, but returned when school
 began in the fall.  In October 2002, Dr. Randall Evans examined Mullen and determined
 she suffered from an "environment sensitivity" and "[g]iven her
 reactive airway disease, she would officially meet the criteria for a reactive
 airways dysfunction syndrome."  In November 2002, AAA Environmental (AAA) conducted
 an "Indoor Environmental Quality Investigation" at Hilton Head
 Elementary and discovered several types of fungi growing in the school,
 including Aspergillus mold.  AAA recommended Mullen vacate her classroom and
 the carpet, ceiling tiles, and HVAC system be treated.  Mullen's classroom
 was gutted, and she returned to teaching in the room in January 2003.
 
 
In April 2003, Mullen filed a Form 50 with
 the Commission reporting an accidental injury to her sinuses and lungs.  In her
 pre-hearing brief, Mullen alleged she suffered from "Restrictive Airway
 Disease resulting from chronic exposure to Aspergillus mold in [her] classroom,
 affecting [her] sinuses and lungs."  Mullen reported the date of
 her accident as "chronic exposure up to 11/02." 
 
 
In August and September 2003, Mullen was
 evaluated by Dr. Charles Banov to determine whether she had any injury that
 could be attributed to mold exposure.  According to Dr. Banov's report, the CT
 scans of Mullen's sinuses were "not remarkable," and her pulmonary
 function and bronchoprovocation tests were normal.[1] Because Mullen's bronchoprovocation test was "[c]ompletely within normal
 limits," Dr. Banov opined that her "respiratory status was excellent
 and met all the criteria for what we consider normalcy." When asked
 whether Mullen had reactive airway disease, Dr. Banov testified "[s]he did
 not . . . because the bronchoprovocation would have brought it out . . . this is
 the gold standard to diagnosing reactive airway disease." Dr. Banov also
 performed a thermophilic battery test to check Mullen's blood for the presence
 of certain fungi, including Aspergillus mold. The test revealed Mullen's blood
 was "absolutely negative" for the presence of Aspergillus mold. 
 
 
Mullen was also evaluated by Dr. Cary
 Fechter in September 2003.  Dr. Fechter performed pulmonary function tests as
 well as chest x-rays and a CT scan of Mullen's sinuses.  He determined
 Mullen's pulmonary function was normal and her sinuses did "not show
 evidence of mucosal thickening or air fluid levels."  Dr. Fechter found
 Mullen's condition had improved, but noted she continued to have symptoms
 related to her sinuses. Dr. Fechter also performed a cardiopulmonary stress
 test, which revealed Mullen had "poor conditioning" with no ischemic
 changes and no oxygen desaturations.  In his report, Dr. Fechter stated:
 
 
 
 All major pulmonary studies including
 methacholine test are normal except for her cardiopulmonary stress test.  The
 stress test performed under strict criteria and using sophisticated carbon
 dioxide/oxygen monitoring system showed a maximum oxygen consumption which was
 clearly lower than normal.  According to the Guide of the Evaluation Permanent
 Impairment, her oxygen consumption of 17.1 ml per kg per minute would place her
 in the 26-50% impairment of the whole person. 
 
 

 
Dr. Fechter opined Mullen "had a verified
 exposure to Aspergillus molds in an enclosed area of high intensity and of long
 term duration" and those factors "would lead to a [sic] expected
 hypersensitivity reaction."   
 
 
Dr. Banov reviewed the results of Dr.
 Fechter's cardiopulmonary stress test and testified Mullen's "poor
 conditioning" did not affect his opinion as to permanent impairment, but
 could provide "some explanation for her subjective complaints of pulmonary
 problems."  Dr. Banov testified the tests he performed indicated Mullen
 "did not have infection with Aspergillus" or "an allergic
 reaction to Aspergillus," and that she did not have any permanent
 impairment. When asked whether there was any objective evidence that Mullen
 sustained any permanent, physical injury as a result of exposure to Aspergillus
 mold, Dr. Banov answered, "Absolutely none." 
 
 
In October 2005, the single commissioner determined,
 based on Dr. Fechter's report, the AAA report, and medical reports, Mullen
 "suffered a compensable injury by accident and/or occupational disease to
 the lungs and sinuses as a result of exposure to the [A]spergillus mold in her
 classroom and her hyper-reactivity to the mold."  The single commissioner
 also found Mullen suffered permanent injury to her sinuses and was entitled to forty
 weeks of compensation, totaling $21,976.80.  The single commissioner determined
 Mullen did not sustain a permanent injury to her lungs.  Beaufort County School District and the South Carolina
 School Boards Insurance Trust (collectively
 Respondents) appealed the single commissioner's order to the Appellate Panel.  The
 Appellate Panel reversed the single commissioner, finding the record contained
 no evidence Mullen sustained a compensable injury or suffered an occupational
 disease arising out of and in the course and scope of her employment.  The
 Appellate Panel also noted "[n]o physician ever assigned an impairment
 rating or even indicated [Mullen] sustained a permanent impairment to her
 sinuses." 
 
 
Mullen appealed the Appellate Panel's
 order to the circuit court.  The circuit court affirmed the Appellate Panel,
 holding substantial evidence supported the Appellate Panel's finding Mullen presented
 no evidence she sustained any injury or occupational disease arising out of her
 employment.  The circuit court also affirmed the Appellate Panel's
 determination that Mullen did not sustain any permanent impairment or loss of
 use as a result of any alleged mold exposure at work.  This appeal followed. 
 
 
 STANDARD OF
 REVIEW
 
 
The substantial evidence
 rule of the Administrative Procedures Act governs the standard of review in a
 workers' compensation decision.  Liberty Mut. Ins. Co. v. S.C. Second Injury
 Fund, 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct. App. 2005).  "In an
 appeal from the Commission, neither this court nor the circuit court may
 substitute its judgment for that of the Commission as to the weight of the
 evidence on questions of fact, but may reverse where the decision is affected
 by an error of law."  Stone v. Traylor Bros., 360 S.C. 271, 274,
 600 S.E.2d 551, 552 (Ct. App. 2004). "Any
 review of the [C]ommission's factual findings is governed by the substantial
 evidence standard."  Id.  "Substantial evidence is not a mere
 scintilla of evidence, nor the evidence viewed blindly from one side of the
 case, but is evidence which, considering the record as a whole, would allow
 reasonable minds to reach the conclusion the administrative agency reached in
 order to justify its action."  Liberty Mut. Ins., 363 S.C. at 620,
 611 S.E.2d at 300.  "The possibility
 of drawing two inconsistent conclusions from the evidence does not prevent an
 administrative agency's findings from being supported by substantial evidence."  Id.
 
 
 LAW/ANALYSIS
 
 
Mullen argues the circuit court erred in finding
 substantial evidence supported the Appellate Panel's determination that she did
 not sustain a compensable injury by accident[2] or an occupational disease[3] arising out of and in the course of her employment.  We agree.
 
 
The circuit court found the
 record contained no evidence Mullen sustained an injury or occupational disease
 arising out of her employment. The circuit court noted Mullen's laboratory
 tests revealed her blood had no mold in it and her lung function and bronchoprovocation
 tests were normal.  The circuit court also concluded that Mullen failed to
 prove any of the statutory requirements of the Occupational Disease Statute,
 S.C. Code Ann. § 42-11-10 to -200 (Supp. 2010). 
 
 
Mullen argues her chronic
 sinus problems, cough, headaches, and fatigue, as well as Dr. Fechter's
 determination that she has a hypersensitivity reaction to mold, all support a
 finding that she suffered a compensable injury.  The Respondents maintain the
 record contains no evidence of injury to Mullen's lungs or sinuses and no
 evidence any of Mullen's symptoms were causally related to any alleged mold
 exposure.  The Respondents also contend Mullen failed to prove the existence of
 a disease caused by any mold exposure in her employment. 
 
 
We find the circuit court erred in
 affirming the Appellate Panel's determination the record contained no evidence
 Mullen sustained an injury or occupational disease arising out of the course
 and scope of her employment.  The record contains some evidence Mullen
 sustained an injury or disease.  In addition to Dr. Fechter's determination
 that Mullen had a hypersensitivity reaction to mold, Dr. Randall Evans examined
 Mullen and determined she suffered from an "environment sensitivity"
 and "[g]iven her reactive airway disease, she would officially meet the
 criteria for a reactive airways dysfunction syndrome." Accordingly, we
 reverse the circuit court's affirmation of the Appellate Panel's finding the
 record contained no evidence Mullen sustained an injury or occupational disease
 arising out of her employment.  We remand the issue of whether Mullen sustained
 an injury or occupational disease and whether she suffered any permanent
 impairment to the Appellate Panel for reconsideration.  We caution that our
 opinion is not to be confused as a finding of no substantial evidence to
 support the Appellate Panel's determination of lack of compensability.  Given
 the Appellate Panel's erroneous conclusion no evidence supported a
 finding of injury or occupational disease, we are simply remanding for the
 Appellate Panel to consider all of the evidence in making its determination
 regarding compensability. 
 
 
 CONCLUSION
 
 We reverse the circuit court's affirmation of the
 Appellate Panel's determination the record contained no evidence Mullen sustained
 an injury or occupational disease arising out of and in the course of her
 employment.  Further, we remand to the Appellate Panel for reconsideration of
 all the evidence to determine whether Mullen sustained an injury or
 occupational disease, and whether she suffered any permanent impairment.  Accordingly,
 the order of the circuit court is 
 REVERSED AND REMANDED.
 HUFF, KONDUROS, and LOCKEMY, JJ., concur.  

[1] Bronchoprovocation tests are used to determine whether
 a patient has reactive airway disease. The test requires patients to
 breathe certain chemicals in order to provoke any pulmonary problems.  
[2] S.C. Code Ann. § 42-1-160 (Supp. 2010).
[3] S.C. Code Ann. § 42-11-10 (Supp. 2010).