719 S.E.2d 288

**Julie G. LANDRY, Appellant,**

v.

**CAROLINAS HEALTHCARE SYSTEMS,**
**Self–Insured Employer, Respondent.**

**No. 4905.**

Court of Appeals of South Carolina.

Heard Sept. 15, 2011.
Decided Nov. 9, 2011.
Rehearing Denied Dec. 19, 2011.

150

Richard C. Detwiler, of Columbia, for Appellant.

Edwin Pruitt Martin, Jr., of Columbia, for Respondent.

LOCKEMY, J.

In this workers' compensation case, Julie Landry appeals the circuit court's affirmation of the Appellate Panel of the South Carolina Workers' Compensation Commission's (Appellate Panel) finding that she did not suffer an injury by accident arising out of and in the course of her employment because the worsening of her pre-existing foot condition was not an unexpected occurrence. We affirm.

## FACTS

Landry was employed by Carolinas Healthcare System (Carolinas Healthcare) in Rock Hill, South Carolina as a radiation therapist. She worked as a radiation therapist for twenty-four years and began her employment with Carolinas Healthcare in July 2002. Landry worked approximately 40 hours a week and spent a majority of the work day standing on her feet. Her job involved helping patients up onto a table, moving to a control room where she would administer radiation, and helping patients off the table. Landry worked primarily on hard surfaces with the exception of rubber mats in the control room. According to Landry, after the rubber mats were removed from the control room, she began experiencing significant pain in her feet.[1]

In August 2004, Landry sought treatment from Dr. Robert van Brederode. Dr. van Brederode noted at Landry's initial visit that she suffered from bunions, which had "bothered her" since she was thirteen years old. Dr. van Brederode diagnosed Landry with hallux valgus deformity and hallux abductus interphalangeus deformity and casted her for custom foot orthotics. In December 2005, Dr. van Brederode performed a bunionectomy with screw fixation on Landry's left foot. Landry was out of work from December 5, 2005, until February 6, 2006, following surgery. In January 2007, Dr. van Brederode

---

1. Victoria Reich, the Administrative Director of the Carolinas Healthcare cancer treatment facility where Landry worked, testified the rubber pads in the control room were never removed.

performed the same surgery on Landry's right foot. Upon returning to work, Landry was informed by Carolinas Healthcare that her employment had been terminated. Landry was unemployed until she found another radiation therapist position in July 2007.

In June 2007, Landry filed a Workers' Compensation Commission Form 50 reporting an accidental injury to her feet caused by repetitive trauma and resulting in stress fractures. Dr. van Brederode noted the conditions in Landry's feet were structural deformities which "were more likely than not aggravated by her being on her feet for long periods of time at work, including standing and walking." He assigned Landry a two percent whole person impairment rating with regard to both her left and right foot. In an amended Form 50 filed in March 2008, Landry reported the injury to her feet was a result of the aggravation of a pre-existing condition and was the result of spending long periods of time standing on her feet. Thereafter, in April 2008, Landry was examined by Dr. James Sebold. Dr. Sebold opined that Landry's bunions were not caused or aggravated by standing on her feet all day at work. He noted that bunions are caused by an anatomical variation and that they can cause pain when standing on them or in a shoe, "but that would be with virtually any job." Dr. Sebold determined Landry's bunions were "in no way related to her job."

A hearing was held before the single commissioner on July 15, 2008. At the hearing, Landry testified she was diagnosed with bunions at age thirteen. Landry further testified that although she had pre-existing foot problems, she had never experienced problems with either foot that kept her out of work until she began working for Carolinas Healthcare. According to Landry, she never experienced any pain in her feet until she went to work for Carolinas Healthcare. On cross-examination, portions of Landry's deposition testimony were read into the record. In her deposition, Landry testified she began having pain in her feet at age thirteen. At the hearing, Landry also denied having foot pain when she started working. Again, Landry was read her deposition testimony wherein she testified she suffered pain when standing on her feet when she worked as an x-ray technician. Landry testified she thought having pain in her feet was just part of doing her job.

She admitted she was still experiencing pain in her feet when she began working for Carolinas Healthcare. Landry also testified at the hearing that she was treated by a podiatrist in Florida in 2001 for foot pain. According to Landry, the podiatrist advised her that her condition would only get worse if she continued to stand on her feet for long periods of time. Landry further testified she knew that if she continued to stand on her feet for prolonged periods of time her condition would worsen.

On July 23, 2008, the single commissioner determined Landry suffered repetitive injuries to both feet arising out of and in the course of her employment. The single commissioner noted that although Landry had foot problems as a child and had seen a podiatrist in 2001, she never missed work or had surgery due to her condition. The single commissioner determined Landry sustained a five percent permanent partial disability to each foot and awarded her $9,043.16. The single commissioner also awarded Landry temporary total disability benefits from December 5, 2006, to February 6, 2006, and January 8, 2007, to July 19, 2007, for a total of $21,685.13. The single commissioner ordered Carolinas Healthcare to pay for Landry's past causally-related medical expenses as well as for orthotics as needed for the remainder of her life.

Carolinas Healthcare appealed the single commissioner's order to the Appellate Panel. The Appellate Panel reversed the single commissioner, finding Landry suffered from bunion deformities in both feet since the age of thirteen which required treatment prior to her employment with Carolinas Healthcare. The Appellate Panel determined Landry had knowledge, through her previous doctor, that prolonged standing would worsen the condition in her feet, yet she continued to work in a job that required her to stand for long periods of time. Relying on Capers v. Flautt, 305 S.C. 254, 407 S.E.2d 660 (Ct.App.1991) and Havird v. Columbia YMCA, 308 S.C. 397, 418 S.E.2d 329 (Ct.App.1992), the Appellate Panel concluded Landry "did not suffer an injury by accident arising out of and in the course of her employment ... because the worsening of her foot condition was not an unlooked for or untoward occurrence." The Appellate Panel further found Carolinas Healthcare was not responsible for Landry's past

and future medical expenses or for any temporary total disability or permanent partial disability benefits.

Landry appealed the Appellate Panel's order to the circuit court. The circuit court affirmed the Appellate Panel, holding substantial evidence supported the Appellate Panel's findings. The circuit court, citing *Capers* and *Havird,* found Landry's foot condition was a pre-existing condition and its aggravation was a "by-product of the normal requirements of performing [her] job." The circuit court determined the impairment rating assigned by Dr. van Brederode "is not an impairment caused by [Landry's] work, but rather is based on the nature of her pre-existing condition." This appeal followed.

## STANDARD OF REVIEW

The substantial evidence rule of the Administrative Procedures Act governs the standard of review in a workers' compensation decision. *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct.App. 2005). "In an appeal from the Commission, neither this court nor the circuit court may substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Stone v. Traylor Bros.,* 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App.2004). "Any review of the [C]ommission's factual findings is governed by the substantial evidence standard." *Id.* "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Liberty Mut. Ins.,* 363 S.C. at 620, 611 S.E.2d at 300. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* at 620, 611 S.E.2d at 301.

## LAW/ANALYSIS

Landry argues the circuit court erred in affirming the Appellate Panel's determination that she was not entitled to workers' compensation benefits because she was aware that

standing for long periods of time could worsen her pre-existing foot condition. We disagree.

Pursuant to section 42–1–160 of the South Carolina Workers' Compensation Act, a claimant is entitled to benefits for an "injury by accident arising out of and in the course of employment." S.C.Code Ann. § 42–1–160 (Supp.2010). "[I]n determining whether something constitutes an injury by accident the focus is not on some specific event, but rather on the injury itself." *Pee v. AVM, Inc.*, 352 S.C. 167, 171, 573 S.E.2d 785, 787 (2002). "[A]n injury is unexpected, bringing it within the category of accident, if the *worker* did not intend it or expect it would result from what he was doing." *Id.* "Therefore, if an injury is unexpected from the worker's point of view, it qualifies as an injury by accident." *Id.*

Landry contends the circuit court erred in relying on *Capers v. Flautt*, 305 S.C. 254, 407 S.E.2d 660 (Ct.App.1991) and *Havird v. Columbia YMCA*, 308 S.C. 397, 418 S.E.2d 329 (Ct.App.1992) in affirming the Appellate Panel. In *Capers,* this court held Capers' outbreak of contact dermatitis was not an unlooked for event that he did not expect, and therefore, it was not accidental. 305 S.C. at 257, 407 S.E.2d at 662. The court noted Capers, a dishwasher, was aware of his condition and had previously left a job due to the same problem caused by exposure to detergents and water. *Id.* at 257, 407 S.E.2d at 661. This court found Capers' outbreak of dermatitis was an event he could anticipate given his past experience. *Id.* at 257, 407 S.E.2d at 662.

The *Capers* decision was followed by this court in *Havird.* Havird suffered from varicose veins which were exacerbated by standing in a stationary position during his job as a masseuse. *Havird*, 308 S.C. at 398, 418 S.E.2d at 330. Havird experienced painful swelling in his feet and underwent surgery. *Id.* Havird's surgeon warned him that standing in one place without much movement was bad for people with varicose veins and that he needed to stay off his feet as much as possible. *Id.* After surgery, Havird returned to work and later filed a workers' compensation claim when his varicose veins condition worsened. *Id.* This court determined Havird did not suffer an injury by accident. *Id.* at 400, 418 S.E.2d at 331. Specifically, this court found Havird's "vascular disease

was not aggravated by unexpected or excessive exertion in the performance of his duties or by unusual and extraordinary conditions in his employment," but rather "the worsening of his varicose veins was the natural and expected result of working in a job that was performed while standing." *Id.* This court noted that it is "well known that prolonged standing is bad for people with varicose veins," and that the aggravation of varicose veins is the "natural and expected result" of standing in one place without much movement. *Id.* The court further noted that Havird knew standing would worsen his condition over time. *Id.*

We disagree with Landry's assertion that the Appellate Panel and the circuit court erred in relying on *Capers* and *Havird.* While Landry argues these decisions are "relatively old," they have not been overruled and we believe they are applicable regarding the issue of whether Landry suffered an injury by accident. Landry, like Capers and Havird, was aware of her physical condition and knew which activities would worsen her symptoms. In the course of her treatment, Landry was warned by her doctor that standing on her feet for prolonged periods of time would worsen her bunion condition. Landry testified she was aware that the amount of standing in her occupation was hazardous to the condition of her feet, yet she continued to work in a job that required her to stand for long periods of time. Accordingly, we find substantial evidence in the record supports the Appellate Panel's finding that the worsening of Landry's bunion condition was not unexpected.

Citing *Pee,* Landry also argues the Appellate Panel and the circuit court erroneously based their decisions on the cause of her injury and not the injury itself. In *Pee,* Employer argued Worker's repetitive trauma injury was not compensable as an injury by accident because the repetitive event which caused the injury was part of Worker's normal work activity and was not unexpected. 352 S.C. at 170, 573 S.E.2d at 787. Our supreme court disagreed with Employer and determined a repetitive trauma injury met the definition of injury by accident. *Id.* at 170, 573 S.E.2d at 787–88. The court held that in determining whether something constitutes an injury by accident, the focus should not be on the specific event causing the injury, but rather on the injury itself. *Id.* at 170, 573 S.E.2d

at 787. The court found "an injury is unexpected, bringing it within the category of accident, if the *worker* did not intend it or expect it would result from what he was doing." *Id.* Therefore, the court determined that "[i]f an injury is unexpected from the workers' point of view, it qualifies as an injury by accident." *Id.* Landry maintains the Appellate Panel and the circuit court failed to consider whether she intended or expected the injury would result from her actions. She contends that here, as in *Pee,* there is no evidence she reasonably intended or expected to be injured as a result of her repetitive work activity. Landry notes her doctor only warned her that her condition would get worse if she continued to stand on her feet, and he did not specifically advise her to change occupations or stay off her feet.

We disagree with Landry's assertion that the Appellate Panel and the circuit court erroneously focused on the cause of her injury and not the injury itself. A review of the orders in the record shows both the Appellate Panel and the circuit court looked to whether Landry's injury, the worsening of her bunion condition, was an expected result of her work activities. Pursuant to *Pee,* an injury is unexpected, and thus an accident, if the worker did not expect the injury would result from her actions. Here, the substantial evidence in the record supports the finding that Landry's injury was not unexpected. Landry testified she had a bunion condition before she went to work for Carolinas Healthcare, and that her doctor in Florida warned her that her condition would worsen if she continued to stand on her feet for long periods of time. Landry also testified that she knew prolonged standing would worsen her bunion condition. Accordingly, we find the circuit court did not err in affirming the Appellate Panel on the issue of compensability.[2]

---

2. Landry also argues the circuit court's decision to affirm the Appellate Panel was punitive. We disagree. This issue was addressed in *Havird.* There, this court stated that due to health problems, "many people have little choice but to work in pain and fatigue or else bring their working lives to a close." *Havird,* 308 S.C. at 400, 418 S.E.2d at 331. The court noted that while it is "unfortunate" that "continuing to work often worsens their health," the "Workers' Compensation Law was not intended to remedy this problem." *Id.*

## CONCLUSION

Based on the foregoing, the circuit court's decision is **AFFIRMED.**

HUFF and PIEPER, JJ., concur.