579 S.E.2d 334

**GEORGIA–CAROLINA BAIL BONDS, INC., Appellant,**

v.

**COUNTY OF AIKEN and Liz Godard, Clerk of Court for Aiken County, Respondents.**

**No. 3621.**

Court of Appeals of South Carolina.

Heard March 12, 2003.

Decided April 7, 2003.

Robert T. Williams, Sr., of Lexington, for Appellant.

W. Lawrence Brown and Robert M. Bell, both of Langley, for Respondents.

ANDERSON, J.:

Georgia–Carolina Bail Bonds brought an action seeking to enjoin the Aiken County Clerk of Court from assessing a $150 fee for each license their bondsmen possessed. After a non-jury proceeding, the circuit court refused to enjoin the Clerk of Court from charging the fee. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Georgia–Carolina Bail Bonds ("Carolina") is a corporation organized, incorporated, and doing business in Aiken County pursuant to the laws of South Carolina. Carolina employs several surety bondsmen who operate as agents for multiple insurance companies that guarantee the bonds they write. The bondsmen have an independent license for each insurance company for which they are an agent. These separate licenses are filed with the Aiken County Clerk of Court. The Clerk of Court is required to process, file, and record additional

documents for each filed license. The Clerk of Court collects licensing fees pursuant to South Carolina law. The Clerk of Court collects $150 dollars annually for each license held by Carolina's bondsmen.

Carolina filed an action seeking to enjoin the Clerk of Court from collecting $150 for each individual license held by a bondsman, arguing South Carolina law only empowers the Clerk of Court to charge $150 a year per individual holding a license, not for each individual license. The parties agreed to a non-jury trial on the pleadings and stipulated to the facts of the case. The circuit court denied the injunction, ruling that the statute enables the Clerk of Court to collect $150 for each license held by a bondsman.

### ISSUE

Does S.C.Code Ann. section 38–53–100(D) authorize the Clerk of Court to collect only $150 per year per individual or $150 per year per license held by that individual?

### LAW/ANALYSIS

Carolina argues the circuit court erred when it denied its action to enjoin the Aiken County Clerk of Court because S.C.Code Ann. section 38–53–100(D) only entitles the Clerk of Court to collect $150 dollars for each bondsman who holds a license and not $150 for each license a bondsman holds. We agree.

### I. Statutory Construction

The cardinal rule of statutory interpretation is to ascertain the intent of the legislature. *State v. Scott*, 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002); *City of Camden v. Brassell*, 326 S.C. 556, 560, 486 S.E.2d 492, 494 (Ct.App.1997); *see also Olson v. Faculty House of Carolina, Inc.*, 344 S.C. 194, 205, 544 S.E.2d 38, 44 (Ct.App.2001) ("The quintessence of statutory construction is legislative intent."). A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute. *Davis v. NationsCredit Fin. Servs. Corp.*, 326 S.C. 83, 484 S.E.2d 471 (1997); *Daisy Outdoor Adver. Co. v. South Carolina Dep't of Transp.*, 352 S.C. 113, 120, 572 S.E.2d 462, 466

(Ct.App.2002); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County*, 331 S.C. 19, 501 S.E.2d 725 (1998); *State v. Morgan*, 352 S.C. 359, 574 S.E.2d 203 (Ct.App.2002); *State v. Hudson*, 336 S.C. 237, 519 S.E.2d 577 (Ct.App.1999). The determination of legislative intent is a matter of law. *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 459 S.E.2d 841 (1995); *Olson*, 344 S.C. at 207, 544 S.E.2d at 45.

■■■ The legislature's intent should be ascertained primarily from the plain language of the statute. *Morgan*, 352 S.C. at 366, 574 S.E.2d at 206; *Stephen*, 324 S.C. at 339, 478 S.E.2d at 77. The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Sys. v. Leatherman*, 309 S.C. 174, 420 S.E.2d 843 (1992); *Morgan*, 352 S.C. at 366, 574 S.E.2d at 206; *Hudson*, 336 S.C. at 246, 519 S.E.2d at 582. The court's primary function in interpreting a statute is to ascertain the intent of the General Assembly. *Smith*, 350 S.C. at 87, 564 S.E.2d at 361. A statute must receive a practical and reasonable interpretation consistent with the "design" of the legislature. *Id.* "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *South Carolina Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).

■■■ When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998); *Adoptive Parents v. Biological Parents*, 315 S.C. 535, 446 S.E.2d 404 (1994); *Hudson*, 336 S.C. at 246, 519 S.E.2d at 581; *see also Santee Cooper Resort v. South Carolina Pub. Serv. Comm'n*, 298 S.C. 179, 184, 379 S.E.2d 119, 122 (1989) ("Words used in a statute should be taken in their ordinary and popular significance unless there is something in the statute requiring a

different interpretation."). Dictionaries can be helpful tools during the initial stages of legal research for the purpose of defining statutory terms. *Heilker v. Zoning Bd. of Appeals for City of Beaufort*, 346 S.C. 401, 552 S.E.2d 42 (Ct.App. 2001). The terms must be construed in context and their meaning determined by looking at the other terms used in the statute. *S. Mut. Church Ins. Co. v. South Carolina Windstorm & Hail Underwriting Ass'n*, 306 S.C. 339, 412 S.E.2d 377 (1991); *Hudson*, 336 S.C. at 246, 519 S.E.2d at 581. Courts should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997); *Morgan*, 352 S.C. at 366, 574 S.E.2d at 206; *see also Stephen*, 324 S.C. at 340, 478 S.E.2d at 77 (Statutory provisions should be given reasonable and practical construction consistent with the purpose of the entire act). Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and given effect, if it can be done by any reasonable construction. *Higgins v. State*, 307 S.C. 446, 415 S.E.2d 799 (1992).

If a statute's language is unambiguous and clear, there is no need to employ the rules of statutory construction and this Court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995); *Cowan v. Allstate Ins. Co.*, 351 S.C. 626, 631, 571 S.E.2d 715, 717 (Ct.App.2002); *Olson*, 344 S.C. at 207, 544 S.E.2d at 45; *see also Brassell*, 326 S.C. at 561, 486 S.E.2d at 495 ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). When the terms of a statute are clear, the court must apply those terms according to their literal meaning. *Cooper v. Moore*, 351 S.C. 207, 212, 569 S.E.2d 330, 332 (2002); *Holley v. Mount Vernon Mills, Inc.*, 312 S.C. 320, 440 S.E.2d 373 (1994); *Carolina Alliance for Fair Employment v. S.C. Dep't of Labor, Licensing, & Regulation*, 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999); *see also Parsons v. Georgetown Steel*, 318 S.C. 63, 456 S.E.2d 366 (1995) (Where the terms of a relevant statute are clear, there is no room for construction.). What a legislature says in the text of a statute is considered the best

evidence of the legislative intent or will. *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *Durham v. United Cos. Fin. Corp.*, 331 S.C. 600, 503 S.E.2d 465 (1998); *Adkins v. Comcar Indus., Inc.*, 323 S.C. 409, 475 S.E.2d 762 (1996); *Worsley Cos. v. South Carolina Dep't of Health & Envtl. Control*, 351 S.C. 97, 102, 567 S.E.2d 907, 910 (Ct.App.2002); *see also Timmons v. South Carolina Tricentennial Comm'n*, 254 S.C. 378, 175 S.E.2d 805 (1970) (Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language.). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000); *Bayle*, 344 S.C. at 122, 542 S.E.2d at 739.

■■■■■■ If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Morgan*, 352 S.C. at 367, 574 S.E.2d at 207; *see also Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. *Hudson*, 336 S.C. at 247, 519 S.E.2d at 582; *Brassell*, 326 S.C. at 561, 486 S.E.2d at 495; *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck*, 330 S.C. 371, 498 S.E.2d 894 (Ct.App.1998). In construing a statute, the court looks to the language as a whole in light of its manifest purpose. *State v. Dawkins*, 352 S.C. 162, 573 S.E.2d 783 (2002); *Adams v. Texfi Indus.*, 320 S.C. 213, 464 S.E.2d 109 (1995); *Brassell*, 326 S.C. at 560, 486 S.E.2d at 494.

## II.   Section 38–53–100(D)

The statutory provision in question reads:

[A] professional or surety bondsman shall pay to the clerk of court of his home county the sum of one hundred fifty dollars annually for each licensee to be paid directly to and retained by the clerk. In addition, each bondsman and

runner shall pay to any other county where he is doing business, the sum of one hundred dollars to be paid and retained by the clerk. The fee must be paid annually and directly to the clerk of court who shall deposit it in an account maintained by the clerk.

S.C.Code Ann. § 38–53–100(D) (2002).

■ Although not binding or controlling, this court gives deference to the opinion of a state agency charged with the duty and responsibility of enforcing a state statute. The South Carolina Department of Insurance is given general oversight responsibility in regard to the licensing of a bondsman. Willie Seawright, the Licensing Coordinator for the South Carolina Department of Insurance, who is not an attorney, has offered his interpretation that "[t]his charge can only be assessed one time a year, regardless of the number of licenses that a bondsman register [sic] in your county." Additionally, David K. Avant, Assistant Attorney General, opined: "It is also my opinion that each person licensed under Chapter 53 of Title 38 is subjected to one fee under Section 38–53–100(D), no matter how many licenses that person holds."

■ South Carolina has long recognized the rule that an opinion or construction of a statute by an agency that is in charge of enforcing the statute should be given great deference. "[T]he construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Brown v. South Carolina Dep't of Health & Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) (quoting *Dunton v. South Carolina Bd. of Examiners in Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987)); *see also Nucor Steel, a Div. of Nucor Corp. v. South Carolina Public Serv. Comm'n,* 310 S.C. 539, 543, 426 S.E.2d 319, 321 (1992) ("Where an agency is charged with the execution of a statute, the agency's interpretation should not be overruled without cogent reason."); *Carolina Alliance for Fair Employment v. South Carolina Dep't of Labor, Licensing, & Regulation,* 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999).

The circuit court established that "licensee" meant "one to whom a license is granted." The circuit court also noted that the legislature did not intend to apply the fee to the individual

bondsman or it would have used the term "bondsman" exactly as it did in the following sentence of the statute. In examining the legislative purpose of the statute, the circuit court found the intent of the legislature was to

> create a system whereby fees would be generated to offset the expense of registering and monitoring the qualifications of bail bondsmen and runners in a given county.... Additionally, the court finds that the increased time and effort required to maintain records and supervise bondsmen with multiple licenses warrants a separate charge for each license that the bondsman holds in the county.

The circuit court felt such a ruling was equitable because "[a]llowing the Clerk to collect only one fee for [the] registration of multiple licenses for an individual bondsman would not be logical or fair. Bondsmen with multiple licenses would pay a proportionately smaller fee for registration of each license than would a bondsman with a single license."

We disagree with the circuit court's interpretation of the statute. The term licensee encapsulates both bondsmen and runners as evidenced by the second passage in the statute. The statute directs a bondsman operating in another county to pay a $100 fee without regard to the number of licenses he or she holds. If the legislature had intended for the fee to be $150 for each license, the legislature could have articulated this requisite with exactitude. Instead, the statute as written requires a licensee to pay $150 to the clerk without specific reference to any number of licenses a bondsman or a runner holds. We acknowledge that the legislative purpose of the statute is to obtain fees to defray the costs of monitoring and licensing bondsmen. However, the legislature, in penning this statute, had sound reasons for circumscription of the fee to the *licensee.* An obvious legislative policy response was that an open-ended per license charge would make the process expensive for a bondsman to enter and remain in the profession. In any event, it is not necessary to bestow the rules of statutory interpretation because it is clear that the term *licensee* encompasses bondsman and the statute only orders the licensee to pay $150 to the clerk without any mention of the number of individual licenses the licensee holds.

## CONCLUSION

Utilizing the "plain meaning" rule of statutory construction, we hold that S.C.Code Ann. section 38–53–100(D) requires a bondsman to pay the $150 fee as a *licensee* and does not require an additional fee for each license the bondsman owns. The circuit court erred when it denied Carolina's action to enjoin the Clerk from assessing a $150 fee for each license a bondsman has. Accordingly, the decision of the trial court is

**REVERSED.**

HUFF, J., and MOREHEAD, Acting Judge, concur.