617 S.E.2d 135

**UNIVERSITY OF SOUTHERN CALIFORNIA, Appellant,**

**v.**

**Robert J. MORAN, Jr., Personal Representative of the Estate of Alexia Lee Anderson, and Trustee of the Anderson Revocable Trust of 1990, dated the 15th day of September, 1991, Louis A. Chubiz and Michael J. Chubiz, Respondents.**

**In re Louis A. Chubiz and Michael J. Chubiz, Petitioners,**

**v.**

**Robert J. Moran, Jr., Personal Representative of the Estate of Alexia Lee Anderson, and Trustee of the Anderson Revocable Trust of 1990, dated the 15th day of September, 1991, Respondent.**

**No. 4016.**

Court of Appeals of South Carolina.

Heard June 15, 2005.

Decided July 18, 2005.

Robert M. Kunes, of Charleston, for Appellant.

James B. Drennan, III, of Spartanburg, and Ronald Stewart Gaynor, of Pawley's Island, for Respondents.

ANDERSON, J.:

Robert Moran, as trustee of the Anderson Trust, entered into a compromise agreement with Louis and Michael Chubiz, which was approved by the probate court. On appeal from the probate court, the circuit court affirmed. The University of Southern California, as a beneficiary of the Anderson Trust, appeals the order of the circuit court. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

As part of their estate plan, Alexia Anderson and her husband, Thomas Anderson, executed pour-over wills and created a joint revocable trust, referred to by the parties as the "Anderson Trust." The Andersons left their entire estates, other than tangible personal property, to the Anderson Trust. The provisions of the trust agreement provided upon the death of the first spouse, all property would remain in trust for the benefit of the surviving spouse. Upon the death of the surviving spouse, the trustee would make nine cash distributions from the trust—$50,000 to be held in trust for the care of the couple's dog and $10,000 to each of their eight named nieces and nephews. Under the trust agreement, the remaining amount in the trust was to be distributed to the University of Southern California (the University).

Mrs. Anderson died shortly after her husband's death, leaving approximately $4,436,000 to be distributed through the trust. Robert Moran, an attorney, was appointed as the personal representative of both estates and the successor trustee of the Anderson Trust. After his appointment, Moran flew to Minnesota for the Andersons' memorial service. While in Minnesota, Moran informed the Andersons' nieces and nephews, including Louis Chubiz and Michael Chubiz, that they would receive $10,000 distributions from the Anderson Trust.

The Chubizes threatened to contest Mrs. Anderson's will and the Anderson Trust on the ground that the documents were the product of undue influence. Based on this threat, Moran and the Chubizes negotiated a compromise agreement in which Mrs. Anderson's estate agreed to pay both of the Chubizes $175,000. Moran signed the agreement in his capacity as trustee of the Anderson Trust, but refused to sign it as personal representative of Mrs. Anderson's estate unless the probate court approved the agreement. The Chubizes filed a petition in the probate court seeking approval of the compromise agreement pursuant to sections 62–3–1101 and –1102 of the South Carolina Code (1987 & Supp.2004). The University received notice of the proposed compromise agreement and filed a motion opposing it.

The probate court heard the University's motion and issued an order finding the requirements of section 62–3–1102 had been met. The probate court ruled: (1) the agreement was the result of a good-faith controversy; and (2) Moran as trustee, not the University, was the holder of the beneficial interest affected by the compromise agreement.

The University appealed the probate court's order to the circuit court, arguing the probate court erred in finding both a good-faith controversy existed and the University was not a holder of a beneficial interest. The University maintained its signature was required for judicial approval of the compromise agreement. Following a hearing, the circuit court issued an order affirming the probate court. The University appeals only the issue of whether it was a holder of a beneficial interest.

### STANDARD OF REVIEW

"Appeal from the probate court is governed by the provisions of the Probate Code." *In re Howard,* 315 S.C. 356, 360, 434 S.E.2d 254, 256 (1993). The Probate Code requires appeals from the probate court be to the circuit court. S.C.Code Ann. § 62–1–308 (Supp.2004). The Probate Code further instructs the circuit court to "hear and determine the appeal according to the rules of law." S.C.Code Ann. § 62–1–308(d) (Supp.2004). "As used in this statute, the phrase 'according to the rules of law' means according to the rules governing appeals." *In re Howard,* 315 S.C. at 360, 434 S.E.2d at 257. "[I]f there is neither a statute nor a rule of court expressly prescribing a different standard of review, the circuit court must apply the same standard that [the appellate court] would apply were the appeal taken directly to either [the supreme court or court of appeals]." *Id.* at 361, 434 S.E.2d at 257.

The standard of review applicable to cases originating in the probate court depends upon whether the underlying cause of action is at law or in equity. *In re Estate of Hyman,* 362 S.C. 20, 25, 606 S.E.2d 205, 207 (Ct.App.2004); *In re Thames,* 344 S.C. 564, 568, 544 S.E.2d 854, 856 (Ct.App.2001). An issue regarding statutory interpretation is a question of law. *Wimberly v. Barr,* 359 S.C. 414, 597 S.E.2d 853 (Ct.App.

2004). Thus, "the circuit court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them." *In re Howard,* 315 S.C. at 361, 434 S.E.2d at 257; *see also In re Estate of Pallister,* 363 S.C. 437, 447, 611 S.E.2d 250, 256 (2005) ("If the proceeding in the probate court is in the nature of an action at law, the circuit court and the appellate court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them."). The standard of review at law is the same whether the facts are found by a jury or the judge sitting without a jury. *In re Howard,* 315 S.C. at 361, 434 S.E.2d at 257.

## *LAW/ANALYSIS*

The University argues the probate court and the circuit court erred in finding the compromise agreement entered into by Moran, as trustee, and the Chubizes met the requirements of sections 62–3–1101 and –1102 of the South Carolina Code. Specifically, the University contends it held a beneficial interest in Mrs. Anderson's estate. Therefore, the University asserts its signature was necessary to meet the requirements set forth in section 62–3–1102 for court approval of a compromise of a controversy regarding a decedent's estate. We disagree.

## I. Rules of Statutory Construction

The cardinal rule of statutory interpretation is to determine the intent of the legislature. *Bass v. Isochem,* Op. No. 3996, 365 S.C. 454, 617 S.E.2d 369 (S.C. Ct.App. filed June 6, 2005) (Shearouse Adv. Sh. No. 24 at 42); *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken,* 354 S.C. 18, 579 S.E.2d 334 (Ct.App.2003); *see also Gordon v. Phillips Utils., Inc.,* 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *McClanahan v. Richland County Council,* 350 S.C. 433, 567 S.E.2d 240 (2002); *Ray Bell Constr. Co. v. School Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998).

The legislature's intent should be ascertained primarily from the plain language of the statute. *Bass v. Isochem*, Op. No. 3996, 365 S.C. 454, 617 S.E.2d 369 (S.C. Ct.App. filed June 6, 2005) (Shearouse Adv. Sh. No. 24 at 42); *State v. Landis*, 362 S.C. 97, 606 S.E.2d 503 (Ct.App.2004); *Stephen v. Avins Constr. Co.*, 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). The language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Mun. Ass'n of South Carolina v. AT & T Communications of S. States, Inc.*, 361 S.C. 576, 606 S.E.2d 468 (2004); *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 420 S.E.2d 843 (1992). The court's primary function in interpreting a statute is to ascertain the intent of the General Assembly. *Smith v. South Carolina Ins. Co.*, 350 S.C. 82, 564 S.E.2d 358 (Ct.App. 2002). "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *South Carolina Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).

When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning. *Miller v. Aiken*, 364 S.C. 303, 613 S.E.2d 364 (2005); *Carolina Power & Light Co. v. City of Bennettsville*, 314 S.C. 137, 442 S.E.2d 177 (1994). If a statute's language is unambiguous and clear, there is no need to employ the rules of statutory construction and this Court has no right to look for or impose another meaning. *Tilley v. Pacesetter Corp.*, 355 S.C. 361, 585 S.E.2d 292 (2003); *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995); *see also City of Camden v. Brassell*, 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *Durham v. United Companies Fin. Corp.*, 331 S.C. 600, 503 S.E.2d 465 (1998); *Adkins v. Comcar*

*Indus., Inc.,* 323 S.C. 409, 475 S.E.2d 762 (1996); *Worsley Companies v. South Carolina Dep't of Health & Envtl. Control,* 351 S.C. 97, 567 S.E.2d 907 (Ct.App.2002); *see also Timmons v. South Carolina Tricentennial Comm'n,* 254 S.C. 378, 175 S.E.2d 805 (1970) (observing that where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *Hodges v. Rainey,* 341 S.C. 79, 533 S.E.2d 578 (2000); *Bayle,* 344 S.C. at.122, 542 S.E.2d at 739.

If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund,* 363 S.C. 612, 624, 611 S.E.2d 297, 303 (Ct.App.2005); *see also Wade v. Berkeley County,* 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. *City of Sumter Police Dep't v. One 1992 Blue Mazda Truck,* 330 S.C. 371, 498 S.E.2d 894 (Ct.App.1998); *Brassell,* 326 S.C. at 561, 486 S.E.2d at 495. In construing a statute, the court looks to the language as a whole in light of its manifest purpose. *State v. Dawkins,* 352 S.C. 162, 573 S.E.2d 783 (2002); *Adams v. Texfi Indus.,* 320 S.C. 213, 464 S.E.2d 109 (1995); *Brassell,* 326 S.C. at 560, 486 S.E.2d at 494.

When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Branch v. City of Myrtle Beach,* 340 S.C. 405, 532 S.E.2d 289 (2000); *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998); *see also Santee Cooper Resort v. South Carolina Pub. Serv. Comm'n,* 298 S.C. 179, 184, 379 S.E.2d 119, 122 (1989) ("Words used in a statute should be taken in their ordinary and popular significance unless there is something in the statute requiring a different interpretation."). "The terms must be construed in context and their meaning determined by looking at the other terms used in the statute." *Hinton v. S.C. Dep't of Prob., Parole and Pardon Servs.,* 357 S.C. 327, 332–33, 592 S.E.2d 335, 338 (Ct.App.2004), *cert. dismissed* (June 6, 2005) (citing *S.*

*Mut. Church Ins. Co. v. South Carolina Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 342, 412 S.E.2d 377, 379 (1991)).

A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *See Liberty Mut. Ins. Co.,* 363 S.C. 612, 611 S.E.2d 297 (Ct.App.2005); *see also Georgia–Carolina Bail Bonds,* 354 S.C. at 22, 579 S.E.2d at 336 ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). The real purpose and intent of the lawmakers will prevail over the literal import of the words. *Browning v. Hartvigsen,* 307 S.C. 122, 414 S.E.2d 115 (1992).

Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention. *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 529 S.E.2d 280 (2000); *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 440 S.E.2d 364 (1994). A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *See Liberty Mut. Ins. Co.,* 363 S.C. at 622, 611 S.E.2d at 302; *see also Mid–State Auto Auction v. Altman,* 324 S.C. 65, 476 S.E.2d 690 (1996) (stating that in ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole).

## II. Sections 62–3–1101 and 62–3–1102

■ Section 62–3–1101 of the South Carolina Code, addressing court approval of agreements involving estates, provides:

A compromise of a controversy as to admission to probate of an instrument offered for formal probate as the will of a decedent, the construction, validity, or effect of a probated will, the rights or interests in the estate of the decedent, of a successor, or the administration of the estate, if approved in a formal proceeding in the court for that purpose, is binding on all the parties including those unborn, unascertained, or who could not be located. *An approved compro-*

*mise is binding even though it may affect a trust or an inalienable interest.* A compromise does not impair the rights of creditors or of taxing authorities who are not parties to it. A compromise approved pursuant to this section is not a settlement of a claim subject to the provisions of Section 62–5–433.

S.C.Code Ann. § 62–3–1101 (Supp.2004) (emphasis added). Section 62–3–1102 of the South Carolina Code states:

The procedure for securing court approval of a compromise is as follows:

(1) The terms of the compromise shall be set forth in an agreement in writing which *shall be executed by all competent persons and parents acting for any minor child having beneficial interests or having claims which will or may be affected by the compromise.* Execution is not required by any person whose identity cannot be ascertained or whose whereabouts is unknown and cannot reasonably be ascertained.

(2) Any interested person, including the personal representative or a trustee, then may submit the agreement to the court for its approval and for execution by the personal representative, the trustee of every affected testamentary trust, and other fiduciaries and representatives.

(3) After notice to all interested persons or their representatives, including the personal representative of the estate and all affected trustees of trusts, the court, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries or other representatives is just and reasonable, shall make an order approving the agreement and directing all fiduciaries subject to its jurisdiction to execute the agreement. Minor children represented only by their parents may be bound only if their parents join with other competent persons in execution of the compromise. Upon the making of the order and the execution of the agreement, all further disposition of the estate is in accordance with the terms of the agreement.

S.C.Code Ann. § 62–3–1102 (1987) (emphasis added). The Reporter's Comments to this section provide: "The agreement

must be signed by all persons having a *beneficial interest in or claim against the estate,* whose interest or claim is affected by the agreement. If an interested party is a minor, the agreement may be executed on his behalf by his parent." S.C.Code Ann. § 62–3–1102 Reporter's Comments (1987) (emphasis added).

Section 62–3–1102 allows competent persons having beneficial interests to enter into a written, court-approved settlement. The settlement, or compromise, is valid and binding where the court finds (1) the controversy is in good faith, and (2) the agreement's effect is just and reasonable. S.C.Code Ann. § 62–3–1102(3) (1987). The issue in the instant case does not pertain to these two statutory requirements, but rather to the prerequisite mandate that the written agreement be executed by all competent persons having a beneficial interest.

The term "beneficial interest" is not defined in the Probate Code. Section 62–1–201(2) defines "beneficiary" as follows: " 'Beneficiary', as it relates to trust beneficiaries, includes a person who has any present or future interest, vested or contingent, and also includes the owner of an interest by assignment or other transfer and, as it relates to a charitable trust, includes any person entitled to enforce the trust." This definition, as indicated, only defines the term to the extent it relates to trust beneficiaries and does not address "beneficiaries" of a decedent's estate.

In the context of section 62–3–1102, "competent persons ... having beneficial interests" refers to a beneficial interest in the decedent's estate. Therefore, the central question here is not who holds the beneficial interest in the Anderson Trust, but who has the beneficial interest in Mrs. Anderson's estate.

Several provisions of the Probate Code support the Chubizes' reading of section 62–3–1102 that the trust holds the beneficial interest in Mrs. Anderson's estate. Section 62–1–201(8) defines "devisee" as "any person designated in a will to receive a devise. In the case of a devise to an existing trust or trustee, or to a trustee on trust described by will, *the trust or trustee is the devisee and the beneficiaries are not devisees."* S.C.Code Ann. § 62–1–201(8) (1987) (emphasis added). Section 62–1–403 provides that, absent a conflict of interest, "orders binding a trustee bind beneficiaries of the trust in

proceedings to probate a will establishing or adding to a trust to review the acts or accounts of a prior fiduciary and in proceedings involving creditors or other third parties[.]" S.C.Code Ann. § 62–1–403(2)(ii) (1987).

That the trust is an entity and not an individual is of no concern as the Probate Code defines "person" as "an individual, a corporation, an organization or other legal entity." S.C.Code Ann. § 62–1–201(29) (1987). Moran signed the compromise agreement in his capacity as trustee of the Anderson Trust.

■ Policy considerations weigh in favor of ruling the trust is the person having the beneficial interest in Mrs. Anderson's estate. "[F]amily settlements are favored by the courts[.]" *Dibble v. Dibble,* 248 S.C. 165, 171, 149 S.E.2d 355, 358 (1966). Our reading of section 62–3–1102 allows the trustee to resolve a dispute and thereby avoid a will contest that would significantly alter the deceased's stated intent. Under the University's interpretation of section 62–3–1102, one of many trust beneficiaries could exercise veto power over an attempted compromise under section 62–3–1102. By failing to consent as a signatory of a settlement, trust beneficiaries would encourage litigation rather than settlement. The better approach is to vest the trustee, who has a fiduciary obligation to administer the trust in the best interests of the trust beneficiaries, with the power to enter into the compromise on behalf of the trust.

Indeed, both the Anderson Trust and the Probate Code give the trustee the power to enter into settlements. The trust agreement enumerates various powers of the trustee. Included in these powers is: (1) the power to "abandon, compromise, arbitrate or otherwise deal with and settle claims in favor of or against our estate and any trust created hereunder as may be deemed advisable by our trustee" and (2) the discretionary power to "do all such acts and exercise all such rights and privileges, although not specifically listed hereunder, which our trustee deems necessary or advisable for the proper and advantageous management, investment and distribution of the trust created hereunder, and to make, sign and deliver any instruments or agreements binding this trust."

In addition to the powers specified in the trust agreement, the agreement provides the trustee "shall have all the powers provided in the statutes." Section 62–7–704(c)(19) of the South Carolina Probate Code (Supp.2004), imparts powers to a trustee, including the power "to pay or contest any claim; to settle a claim by or against the trust by compromise, arbitration, or otherwise[.]" Thus, the trust agreement and the statutory authority give Moran the power to compromise a claim on behalf of the trust.

■ Finally, the University, as a beneficiary under the trust, does have the ability to influence the court's decision whether to approve the compromise agreement. Section 62–1–201(20) of the Probate Code provides the following definition for "interested person:"

> "Interested person" includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person which may be affected by the proceeding. It also includes persons having priority for appointment as personal representative and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

S.C.Code Ann. § 62–1–201(20) (1987).

Under this statute, we find the University is an interested person. Section 62–3–1102(3) of the Probate Code states interested persons are entitled to receive notification prior to a court's decision to approve a compromise agreement. The University did in fact receive such notice in this case. Upon receipt of notification, the University objected to the compromise agreement and was given an opportunity to voice its objection to the probate court prior to the court's decision on whether or not to approve the compromise agreement. Section 62–3–1102 of the South Carolina Probate Code, however, does not require interested persons execute the compromise agreement in order for a court to approve the agreement. Thus, the University, as an interested party, is entitled to

receive notice of a proposed compromise, but its signature is not required for court approval of the agreement.

## CONCLUSION

We hold the Anderson Trust is the beneficiary of Mrs. Anderson's estate, and Moran, as trustee, is the person required to execute the compromise agreement. Because only the trust, as holder of the beneficial interest, must sign the compromise agreement, the circuit court did not err in concluding the requirements of section 62–3–1102 were met. Section 62–3–1102(3) mandates that an interested person receive notice of a proposed compromise, and allows the interested person to participate in the proceedings, including objecting to any compromise agreement. Accordingly, the order of the circuit court is

**AFFIRMED.**

STILWELL and WILLIAMS, JJ., concur.