781 S.E.2d 156

Betty FISHER, as Real Representative for
Alice SHAW–BAKER, Appellant,

v.

Bessie HUCKABEE, Kay Passailaigue Slade, Sandra Byrd, and
Peter Kouten, and Does 1 through 100, Defendants,

Of whom Bessie Huckabee, Kay Passailaigue Slade, Sandra
Byrd, and Peter Kouten are the Respondents.

Appellate Case No. 2014–000175.
No. 5371.

Court of Appeals of South Carolina.

Heard Oct. 14, 2015.
Decided Dec. 9, 2015.
Rehearing Denied Jan. 21, 2016.

172

John Hughes Cooper, of John Hughes Cooper, P.C., of Mount Pleasant; and Lisa Fisher, pro hac vice, for appellant.

Peter A. Kouten, of Johns Island, pro se; and Warren W. Wills, III, of the Law Office of W. Westbrook Wills, III, of Folly Beach, for respondents Bessie Huckabee, Kay Passailaigue, and Sandra Byrd.

WILLIAMS, J.

In this civil matter, Betty Fisher appeals the circuit court's grant of summary judgment in favor of Bessie Huckabee, Kay Passailaigue Slade, Sandra Byrd, and Peter Kouten (collectively "Respondents"). Fisher argues the court erred in (1) holding she lacked standing to bring a survival action against Respondents on behalf of her deceased aunt as a "real representative"; (2) failing to find Kouten waived the issue of standing; (3) failing to find she had standing based on equitable principles of trust law; (4) failing to find South Carolina public policy supports giving her third-party standing; (5) granting summary judgment when genuine issues of material fact existed as to her claims; (6) failing to rule upon the motion to disqualify Kouten as counsel for Huckabee, Slade, and Byrd; and (7) considering trial counsel's arguments as factual contentions. We affirm.

**FACTS/PROCEDURAL HISTORY**

Alice Shaw–Baker died testate in Charleston County, South Carolina, at the age of 79 on February 25, 2009. Originally from San Francisco, California, Shaw–Baker enlisted in the Navy and was subsequently stationed in Charleston. After her service, Shaw–Baker worked in accounting-related jobs for several employers in the Charleston area, including Charleston Memorial Hospital for over twenty years. Shaw–Baker married and divorced twice, and she had no children.

Shaw–Baker, a passionate advocate for animals, had executed prior wills that left the vast majority of her estate to animal welfare and rescue organizations. Her prior wills also included bequests to Huckabee and Slade, who were Shaw–Baker's friends and former colleagues at Charleston Memorial Hospital. In her last will and testament, executed on May 21, 2001, Shaw–Baker devised her entire estate to Huckabee, Slade, and another former colleague, Byrd. Shaw–Baker also named Slade the sole beneficiary of her state deferred compensation plan and a life insurance policy. Further, Shaw–Baker nominated Huckabee as personal representative. Huckabee petitioned the probate court for informal probate of the will on March 11, 2009. The probate court admitted the will and appointed Huckabee as personal representative.

Shaw–Baker's closest living heir is her niece, Fisher, of Long Beach, California. On April 27, 2009, Fisher contested the will and sought removal of Huckabee as personal representative.[1] Fisher alleged Huckabee and Slade had unduly influenced Shaw–Baker by inducing her to execute the May 21, 2001 will naming them the sole beneficiaries of the entire estate—with the exception of a $4,000 bequest to Byrd—in exchange for the promise they would provide care for Shaw–Baker such that she could avoid being placed in an assisted living facility. Fisher alleged that, despite their promise, Huckabee and Slade failed to provide adequate care for Shaw–Baker, allowing her health and home to deteriorate to the point that her grand-niece was appointed as her guardian—conservator in her last year of life. Fisher also alleged Kouten, Shaw–Baker's court-appointed guardian ad litem and attorney, acted contrary to Shaw–Baker's interests and failed to exercise reasonable care in advising her on conservator and estate matters.

Based on these allegations, Fisher filed the instant lawsuit in circuit court on February 23, 2012, as Shaw–Baker's "real representative" under the survivability statute.[2] In her complaint, Fisher requested damages and attorney's fees, bringing causes of action against all Respondents for, *inter alia,* violation of the Omnibus Adult Protection Act[3] and breach of fiduciary duty. Additionally, Fisher asserted a legal malpractice claim against Kouten.

Respondents filed a motion for summary judgment on December 17, 2012, claiming Fisher—as Shaw–Baker's real representative—lacked standing to bring this action. The circuit court granted Respondents' motion in a Form 4 order issued on May 8, 2013.[4] Fisher filed a motion to alter or amend judgment on May 28, 2013.

---

1. The will contest is still pending in the probate court.

2. *See* S.C.Code Ann. § 15–5–90 (2005).

3. S.C.Code Ann. §§ 43–35–5 through –595 (2015).

4. The circuit court made a scrivener's error in this order by granting summary judgment to Fisher. The court corrected this mistake in a September 3, 2013 order, in which it granted summary judgment to Respondents.

In its December 12, 2013 order, the circuit court denied Fisher's motion to alter or amend and affirmed its prior order granting Respondents' motion for summary judgment. The court held a real representative could not sue on behalf of a decedent for injuries to his person or personal property under the survivability statute. Noting a real representative historically was only able to bring actions related to the decedent's real estate, the court found only a personal representative could bring those actions. Accordingly, the court concluded Fisher's only remedy was to seek removal of Huckabee as personal representative in probate court. This appeal followed.

**STANDARD OF REVIEW**

"An appellate court reviews the grant of summary judgment using the same standard employed by the circuit court." *Columbia/CSA–HS Greater Columbia Healthcare Sys., LP v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 411 S.C. 557, 560, 769 S.E.2d 847, 848 (2015). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that . . . no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Determining the proper interpretation of a statute is a question of law, and [the appellate court] reviews questions of law de novo." *Lambries v. Saluda Cty. Council*, 409 S.C. 1, 7, 760 S.E.2d 785, 788 (2014) (quoting *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008)).

**LAW/ANALYSIS**

**I. Standing as "Real Representative"**

Fisher contends the circuit court erred in finding she lacked standing to bring personal causes of action on behalf of Shaw–Baker as her "real representative" under the survivability statute. According to Fisher, because Huckabee—Shaw–Baker's personal representative—will not conceivably sue herself and the other Respondents, Fisher may bring this action as Shaw–Baker's real representative. We disagree.

 "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the [General Assembly]." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "The [General Assembly]'s intent should be ascertained primarily from the plain language of the statute." *Ex parte Cannon,* 385 S.C. 643, 655, 685 S.E.2d 814, 821 (Ct.App.2009) (quoting *Georgia–Carolina Bail Bonds, Inc. v. Cty. of Aiken,* 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003)). "If, however, the language of the statute gives rise to doubt or uncertainty as to legislative intent, the construing court looks to the statute's language as a whole in light of its manifest purpose." *Id.* "The construing court may additionally look to the legislative history when determining the legislative intent." *Id.*

Section 15–5–90 of the South Carolina Code (2005) provides the following:

Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal property shall survive both to and against the personal or real representative, as the case may be, of a deceased person. . . .

Because the language in section 15–5–90 is broad and does not explicitly state which causes of action survive to the personal or real representative, we look to the legislative intent behind this statute to resolve the question of whether Fisher may bring this action on behalf of Shaw–Baker. *See Ferguson v. Charleston Lincoln Mercury, Inc.,* 349 S.C. 558, 564, 564 S.E.2d 94, 97 (2002) (explaining "the [survivability] statute's language is broad and ostensibly appears to include almost every conceivable cause of action" with few exceptions).[5]

"At common law, a personal action *ex delicto* did not survive the death of either party." *Id.* at 564, 564 S.E.2d at 97. In 1859, the General Assembly passed a wrongful death statute, a version of Lord Campbell's Act in England, that provided a cause of action against a defendant who wrongfully killed a decedent for the benefit of certain family members. Act No.

---

5. We note that some, if not all, of Fisher's causes of action include allegations of fraud and deceit, both of which are well-recognized common law exceptions to the survivability statute. *Ferguson,* 349 S.C. at 564, 564 S.E.2d at 97. Therefore, even if Fisher had standing, she could not bring these actions on Shaw–Baker's behalf under the statute.

4480, 1859 S.C. Acts 825–26; *see also* Robert L. Wynn, III, Note, *Death of the Head of the Family—Elements of Damages Under South Carolina's Lord Campbell's Act,* 19 S.C. L. REV. 220, 220–21 (1967) (providing a history of wrongful death and survival actions in South Carolina). The General Assembly also enacted the first survivability statute in 1892, stating that "causes of action for and in respect to any and all injuries and trespasses to and upon *real estate* shall survive both to and against the personal or real representative (as the case may be) of deceased persons." Act No. 15, 1892 S.C. Acts 18 (emphasis added). Our supreme court later held the wrongful death statute did not provide for the survival of a decedent's cause of action for personal injuries suffered prior to death for the benefit of his estate. *In re Estate of Mayo,* 60 S.C. 401, 413–14, 38 S.E. 634, 637–38 (1901). Therefore, in 1905, the General Assembly amended the survivability statute—which initially covered only real property—and inserted the words "and any and all injuries to the person or to personal property" after the words "real estate." Act No. 471, 1905 S.C. Acts 945; *see also Grainger v. Greenville, Spartanburg & Anderson Ry. Co.,* 101 S.C. 399, 403, 85 S.E. 968, 969 (1915) (noting the legislative intent behind the amendment). The 1905 change is reflected in the current survivability statute. *See* § 15-5-90.

At common law, real and personal property were two distinct "species" during the administration of an estate. *Hull v. Hull,* 24 S.C.Eq. (3 Rich.Eq.) 65, 91 (1850). Title to a decedent's real property passed directly to his intestate heirs at law or devisees. *Id.* Thus, those individuals succeeding to the real property stood in the place of the decedent in regard to his affairs concerning the land and were sometimes called the "real representatives." 33 C.J.S. *Executors and Administrators* § 2 (2009).

Legal title to the decedent's personal property vested upon his death with his executor or administrator, otherwise referred to as the "personal representative." *Hull,* 24 S.C.Eq. at 91. A testator, however, could devise title to his real property to his personal representative and direct him to sell it to pay off estate debts or distribute the sale proceeds to his legatees. *See* S.C.Code of 1902 § 2600 (Civ. Code); *Hull,* 24 S.C.Eq. at 91. Therefore, a real or personal representative,

but not both, could be vested with title in the decedent's real property. *See Hull,* 24 S.C.Eq. at 91 ("If [real property] is devised, unless devised to the executor, or power is given to him to dispose of it, [the executor] has no power to interfere with it, and the devisee takes it without his assent.").

 The dichotomy between a personal and real representative is reflected in the 1892 Act. The General Assembly established the right to pursue survival actions involving a decedent's real estate to the "personal or real representative (as the case may be)." Act No. 15, 1892 S.C. Acts 18. The use of the words "as the case may be" demonstrates the General Assembly intended that either the personal or real representative could pursue a survival action, depending on how the title in real property vested upon the decedent's death. If the title vested to a testator's personal representative, then he would be the proper individual to bring a suit for injuries or trespass to the land as its legal owner. *See* Act No. 15, 1892 S.C. Acts 18. If, on the other hand, the title vested in an heir at law or devisee, then he could bring an action on behalf of the decedent as the real representative. *See* Act No. 15, 1892 S.C. Acts 18; *see also, e.g., Duke v. Postal Tel. Cable Co.,* 71 S.C. 95, 98–99, 50 S.E. 675, 676 (1905) (holding the decedent's intestate heirs are real representatives under the Act). After the 1905 amendment, the General Assembly expanded a personal representative's power in survival suits, allowing that person to also bring actions regarding injuries to the decedent's person or personal property, while a real representative remained constrained to actions related to injury or trespass to the decedent's real property. *See Bennett v. Spartanburg Ry., Gas & Elec. Co.,* 97 S.C. 27, 29, 81 S.E. 189, 189 (1914) (concluding the 1905 amendment "provides, among other things, that causes of action for and in respect to 'any and all injuries to the person' shall survive to the *personal representative* of the deceased" (emphasis added)); *id.* at 30, 81 S.E. at 189 (stating the recovery, if any, in a personal survival action goes to the decedent's personal representative to hold as assets of the estate). Therefore, based on the legislative history of the survivability statute, we find the "real representative"—a decedent's intestate heir or devisee of his real property—is a remnant of the 1892 Act and only continued to have standing after the 1905 amendment in

survival actions involving trespass or injury to the decedent's real estate.

In addition to the legislative history of the survivability statute, we find the current version of the South Carolina Probate Code lends support to our conclusion that a real representative has no role in a survival suit for injuries to the decedent's person. In 1986, the General Assembly enacted a modified version of the Uniform Probate Code that modernized and made sweeping changes to the state's antiquated probate law on which the survivability statute was based. Act No. 539, 1986 S.C. Acts 3446 (codified as amended at S.C.Code Ann. §§ 62–1–100 through –7–1106 (Supp.2014)); *see also generally* S. Alan Medlin, *Selected Substantive Provisions of the South Carolina Probate Code: A Comparison with Previous South Carolina Law,* 38 S.C. L. REV. 611 (1987) (discussing the substantive changes made to South Carolina probate law). Under the modern Probate Code, the personal representative is the central figure responsible for the orderly management of a decedent's estate. *See* S.C.Code Ann. §§ 62–3–701 through –721 (Supp.2014). The personal representative, for example, is afforded the same standing to sue that the decedent had immediately prior to death. S.C.Code Ann. § 62–3–703(c) (Supp.2014). The personal representative also may prosecute and defend against claims for the protection of the estate. S.C.Code Ann. § 62–3–715(20) (Supp.2014). Most importantly, for purposes of this case, the personal representative retains authority to compromise and settle suits for "pain and suffering[,] or both, and all claims and actions based on causes of actions surviving, to personal representatives, arising, asserted, or brought under or by virtue of any statute or act of this State." *Id.* § 62–3–715(24). The real representative, on the other hand, is mentioned nowhere in the modern Probate Code.

Nevertheless, in the instant case, Fisher argues specific language in *Duke* supports her contention that she may bring a survival action for any cause of action as Shaw–Baker's real representative. In *Duke,* the circuit court dismissed a landowner's action for damages against a telegraph company when it constructed a telegraph line through his land without a permit in 1903. 71 S.C. at 96–97, 50 S.E. at 675. The landowner died intestate that same year, leaving his wife and

children as heirs. *Id.* at 97, 50 S.E. at 675. His wife and children brought a subsequent action against the defendant telegraph company for the construction of the telegraph line, and a jury returned a verdict in their favor. *Id.* at 97–98, 50 S.E. at 675–76.

On appeal, the telegraph company argued the heirs had no standing to bring the action on behalf of the deceased land-owner. *Id.* at 98, 50 S.E. at 676. Our supreme court disagreed and held the heirs had a right to sue under the survivability statute. *Id.* Specifically, the court noted the following:

> [T]he right to sue is conferred by sec[tion] 2859 of the Code of Laws [of 1902], which provides that "causes of action for and in respect to any and all injuries and trespasses, to and upon real estate, shall survive both to and against the personal or real representative (as the case may be) of deceased persons. . . ." *The heirs at law are the real representatives.*

*Id.* at 98–99, 50 S.E. at 676 (emphasis added).

Relying upon *Duke*, Fisher claims she is a real representative because she is Shaw–Baker's heir at law. In *Duke*, the decedent's intestate heirs succeeding to his real property brought the action for injury and trespass to his land under the 1892 Act.[6] As heirs at law who succeeded to his real estate, the decedent's wife and children were the proper real representatives to bring a survival action on his behalf. *See* 33 C.J.S. *Executors and Administrators* § 2 (2009). In the present case, however, Shaw–Baker died testate, and the probate court appointed a personal representative to manage the estate. As discussed above, although Fisher desires to bring personal causes of action on behalf of Shaw–Baker, we find these actions may only be properly pursued by the personal representative. *See Bennett,* 97 S.C. at 29, 81 S.E. at 189.

Based on the foregoing, we hold the circuit court properly granted Respondents' motion for summary judgment because Fisher lacked standing to bring a survival action against them as Shaw–Baker's real representative.

---

6. The opinion in *Duke* was filed only seven days after the General Assembly passed the 1905 amendment.

## II. Unpreserved Issues

 Fisher argues Kouten waived the issue of standing by failing to identify himself as a moving party in his motion for summary judgment. Fisher also asserts she has standing to bring the survival action under equitable principles of trust law. We find these issues are not preserved for appellate review because they were not properly raised to and ruled upon by the circuit court. *See Chastain v. Hiltabidle,* 381 S.C. 508, 514–15, 673 S.E.2d 826, 829 (Ct.App.2009) ("[A]n appellate court cannot address an issue unless it was raised to and ruled upon by the [circuit] court."); *Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.,* 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (stating a party may not raise an issue for the first time in a motion to reconsider, alter, or amend a judgment that could have been presented prior to judgment).

## III. Remaining Issues

Because our finding that Fisher lacked standing is dispositive in this case, we decline to address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

## CONCLUSION

Based on the foregoing, we hold a real representative does not have standing to bring personal actions on behalf of a decedent.[7] Accordingly, the circuit court's grant of summary judgment in favor of Respondents is

**AFFIRMED.**

HUFF and THOMAS, JJ., concur.

---

7. The instant case does not present the occasion for us to determine whether a real representative continues to have standing to pursue a survival action based on trespass or injury to a decedent's real property after the enactment of the South Carolina Probate Code.